PEOPLE v. DETROIT UNITED RAILWAY.

1. MUNICIPAL CORPORATIONS—STREET RAILWAYS—REGULATIONS.
It is within the power of a city to pass an ordinance requiring a street-railway company to use reasonable safeguards against danger.

2. MUNICIPAL ORDINANCES—REGULATIONS—PRESUMPTION OF VALIDITY.
An ordinance which provides safeguards against danger to the public will ordinarily be presumed to be valid.

3. SAME—STREET RAILWAYS—DISCRETION OF COUNCIL.
Where a street-railway ordinance can fairly be said to tend towards better and safer conditions, the discretion of the council in enacting it will not be interfered with.

4. SAME—VALIDITY—REASONABLENESS.
A mere preponderance of oral testimony showing that an ordinance requiring street cars to be equipped with air or electric brakes is unreasonable will not justify the court in holding the ordinance invalid. Per HOOKER, C. J., MOORE, CARPENTER, and GRANT, JJ.

5. SAME—DECISION OF JURY—JUDICIAL NOTICE.
The validity of an ordinance cannot be made to depend upon what a jury may consider, from the oral evidence in each case, to be reasonable, where the facts establishing its reasonableness are such that the court will take judicial notice of them.

6. STREET RAILWAYS—REGULATIONS—AIR BRAKES.
Where a common council, in granting a street-railway company an ordinance, reserved the right to make such further regulations as might be deemed necessary to protect the interests of the public, an ordinance subsequently enacted, requiring the cars to be equipped with air or electric brakes, is valid. Per HOOKER, C. J., MOORE, CARPENTER, and GRANT, JJ.

7. SAME—POLICE POWER.
The enforcement of an ordinance requiring a street railway to equip its cars with air or electric brakes at a large outlay of money does not take property without due process of law, as it is a proper exercise of the police power.

8. SAME.
   An ordinance requiring a street railway to equip its cars with air or electric brakes, but not designating which shall be used, is not invalid because electric brakes are ineffective.

9. MUNICIPAL ORDINANCES—REASONABLENESS—VALIDITY—FINDING OF FACTS.
   Where the reasonableness and validity of a municipal ordinance depends upon facts to be deduced from the evidence, a judgment sustaining the validity of the ordinance, rendered on a trial before the court without a jury, will not be reversed, in the absence of a special finding of facts which would show it to be unreasonable. Per MONTGOMERY, J.

*Certiorari* to recorder's court of Detroit; Phelan, J. Submitted April 23, 1903. (Docket No. 37.) Decided November 9, 1903.

The Detroit United Railway was convicted of violating an ordinance requiring the use of certain brakes on its cars. Affirmed.

*Brennan, Donnelly & Van De Mark, Charles D. Joslyn,* and *Henry L. Lyster (John J. Speed,* of counsel), for appellant.

*Timothy E. Tarsney, P. J. M. Hally,* and *Charles E. Love,* for the people.

HOOKER, C. J.   The defendant is a street-railway company, and was convicted and fined in the recorder's court of the city of Detroit for the violation of an ordinance of said city.   The cause is here upon *certiorari.*

There is no doubt of the violation of the ordinance. The cause being tried without a jury, the court determined the question of the reasonableness of said ordinance, which appears to have turned upon questions of fact.   Counsel for the defendant say in their brief that "there can be but one question for this court to decide; *i. e.,* is it a reasonable regulation to require the defendant company to equip its cars with air or electric brakes?"   The railroad was constructed under the statutes existing at different times,

when different sections were built; the present *status* of the company being the outcome of various purchases or consolidations, or both. All of said statutes required the consent of the city authorities, and this was given in the various instances. The following reservation of power is contained in such consent, and is applicable to the present case:

"It is hereby reserved to the common council of the city of Detroit the right to make such further rules, orders, or regulations as may from time to time be deemed necessary to protect the interest, safety, welfare, or accommodation of the public in relation to said railways."

In the same connection should be read sections 6425 and 6447 of the Compiled Laws, viz. :

"All companies or corporations formed for such purposes shall have the exclusive right to use and operate any street railways constructed, owned, or held by them : *Provided,* that no such company or corporation shall be authorized to construct a railway under this act through the streets of any town or city without the consent of the municipal authorities of such town or city, and under such regulations and upon such terms and conditions as said authorities may from time to time prescribe : *Provided,* further, that after such consent shall have been given, and accepted by the company or corporation to which the same is granted, such authorities shall make no regulations or conditions whereby the rights or franchises so granted shall be destroyed or unreasonably impaired, or such company or corporation be deprived of the right of constructing, maintaining, and operating such railway in the street in such consent or grant named, pursuant to the terms thereof."

"After any city, village, or township shall have consented, as in this act provided, to the construction and maintenance of any street railways therein, or granted any rights and privileges to any such company, and such consent and grant have been accepted by the company, such township, city, or village shall not revoke such consent, nor deprive the company of the rights and privileges so conferred."

The ordinance provides as follows:

"SECTION 1. On and after May 1, 1902, no street car or cars shall be operated or run on any street, avenue, or highway in the city of Detroit, unless the same be equipped with air or electric brakes."

Section 2 provides that no street-railway company nor any officers thereof "shall run or operate, or permit to be run or operated, any car upon or in any street or avenue in said city, unless the same is equipped with air brakes or electric brakes." Section 3 provides the penalty.

Counsel for the defense introduced testimony tending to show that it had several hundred cars in the city, and that it would cost $350,000 to equip them with the prescribed brakes; that many of such cars were single-truck cars; that it was replacing those as rapidly as it could consistently with double-truck cars; that, while said brakes would be useful upon large suburban cars, which make few stops, they are not well adapted to use upon cars which make frequent stops, such as cars run upon city lines exclusively, or to small, single-truck cars; that all cars are equipped with sufficient hand brakes, and that they cannot be safely dispensed with; that they are more certain in their action than the brakes prescribed, and consequently safer; that their average efficiency is greater, and that no city is known to have all of its railroad cars equipped with air or electric brakes; that such brakes are in an experimental stage; that they have been repeatedly tried and discarded in cities; and that, if used, they increase the danger of accident, both by reason of the uncertainty of their action when an attempt is made to use them, and the uncertainty in the minds of motormen which brake had better be used in cases of emergency. There was testimony offered in opposition.

The object of this ordinance is to compel the equipment of street cars with the means of stopping with certainty and expedition. We may take judicial notice that this is desirable, for we are judicially cognizant of the fact that the use of street cars is necessarily attended by imminent danger to citizens who are upon the highway, as well as

passengers.   It is contended that this ordinance is invalid
—*First,* because it can be said not to provide for brakes
which will tend to lessen danger; *second,* because its en-
forcement will require an outlay large in comparison with
the benefits which would result from the use of such
brakes as are required by it.   A large amount of testi-
mony was taken upon both these questions, and this was
passed upon by the trial judge, who has held the ordi-
nance valid.

It is past controversy that the city may regulate the
conduct of defendant's business to the extent of requiring
reasonable safeguards against danger.   Nellis, Street
Surface Railroads, pp. 206, 208, 219; *City of Kalamazoo*
v. *Traction Co.,* 126 Mich. 525 (85 N. W. 1067); *City of
Detroit* v. *Railway Co.,* 184 U. S. 368 (22 Sup. Ct. 410);
*Lake Shore, etc., R. Co.* v. *Ohio,* 173 U. S. 285 (19 Sup.
Ct. 465); *Chicago & Alton R. Co.* v. *City of Carlinville,*
200 Ill. 314 (65 N. E. 730, 60 L. R. A. 391); and other
cases cited in briefs of counsel.   Many regulations are
permissible, although in all or most instances they involve
some limitation on the liberty or burden upon the property
of individuals.   Sanitary regulations are common, includ-
ing the abolition of slaughter-houses and other noxious
places, and restrictions upon burial.   Protection against
fire and danger from explosions, the use of highways and
speed of vehicles, the regulation of occupations, buildings,
etc., are among the many instances where municipal
action is upheld.   An ordinance which, on its face, shows
that such end was in contemplation, will ordinarily be
presumed to be valid.   See 21 Am. & Eng. Enc. Law
(2d Ed.), p. 978, and cases cited; Booth, St.-Ry. Law, §
224; Cooley, Const. Lim. (6th Ed.) p. 241, note; Nellis,
Street Surface Railroads, 215; *Chicago & Alton R. Co.*
v. *City of Carlinville, supra.*   Not only will the burden
of proof be upon one who attacks its validity, but the dis-
cretion of the council will not be interfered with upon light
grounds, or where the regulation can fairly be said to
tend toward a better and safer condition.

The ordinance in question punishes the operation of a car not equipped with air or electric brakes. This ordinance is in harmony with the statute (2 Comp. Laws, § 6280) which for many years has required the equipment of steam passenger cars with air brakes. Before we should say that a similar requirement as to street cars is unreasonable, and therefore invalid, it should be made to appear clearly either that there is no necessity for a more efficient brake than a hand brake upon street cars, or that neither an air nor an electric brake would be such; and if, as is contended, and apparently conceded, the hand brake is not to be dispensed with, it would be necessary to show that a car equipped with both would not be safer than with the hand brake alone.

Counsel urge that the uncontradicted evidence shows that this ordinance is unreasonable. We think not, and, if it might be said that a preponderance of the oral testimony supports that view, we think that would be insufficient to justify us in nullifying the ordinance. We may take judicial notice that atmospheric or vacuum brakes are in general use on passenger trains, that they are common upon freight cars and trains, and that they are rarely ineffective. The record shows that they are in use on electric cars of the larger type, both on suburban lines and on city roads. If they were not, it is patent that they could be; and, while counsel contend that they could not be applied to small cars, it has not been satisfactorily proven. It is not improbable that the exact device used on large cars might not be adapted to use on a small one (especially where but one set of trucks is used) without some modification; but that is not shown to be mechanically difficult, and every one knows that such problems are being solved daily in the realm of mechanics. Moreover, there is proof that one or more small cars have been equipped and successfully run with them. The validity of an ordinance cannot be made to depend upon what a trial judge, a justice of the peace, or a jury may conclude from the testimony and opinions of such witnesses as may happen to be

brought into court in the first case that arises, where, as in this case, its provisions, when viewed in the light of facts of which the courts may take judicial notice, are reasonable, and clearly within the discretion of the council, either by virtue of a reserved power resting in contract, or the police power.

We do not feel called upon to say much about the claim that this ordinance should be held invalid upon the ground that it will require a large outlay, or that it takes property without due process of law. It is too well settled that the State or city may enforce regulations clearly looking to the safety of the public, and reasonably adapted to such end, to make it necessary. All property is held subject to the exercise of the police power. See *Village of Carthage* v. *Frederick*, 122 N. Y. 268 (25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490); *Attorney General* v. *Jochim*, 99 Mich. 371 (58 N. W. 611, 23 L. R. A. 699, 41 Am. St. Rep. 606). In Cooley, Const. Lim. (6th Ed.) p. 708, it is said:

"All contracts and all rights, it is declared, are subject to this [police] power; and not only may regulations which affect them be established by the State, but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change, or as experience may demonstrate the necessity."

See cases cited in note to last authority.

It has been urged that the proof shows that a light car can be as effectively handled and controlled by hand as by power brakes, and there is proof to that effect, and also that electric or air brakes are less reliable than hand brakes on such cars. This point is covered by what has been said. If the air brake or electric brake is more liable to get out of repair, and there is difficulty in stopping the car at a given point, it is not shown that proper supervision would not assure effective brakes at all times, and that the employment of skilled or experienced motormen would not overcome the latter difficulty. But, if not, the

evidence, as well as common experience, shows that a power brake is quicker in its action; and in emergencies, where human life is involved in delay, expeditious stopping of a car should not yield to possible inconvenience in the matter of stopping places.

It is also said that the ordinance is invalid even if air brakes can be said to be effective, because it does not designate between air and electric brakes, which last are said to be clearly shown to be ineffective. We think there is no force in this point. It is not to be presumed that any one will use the latter under such circumstances. Defendant certainly is not required to.

The conviction is affirmed.

MOORE, CARPENTER, and GRANT, JJ., concurred with HOOKER, C. J.

MONTGOMERY, J. (*concurring*). It is the contention of defendant that the ordinance in question is unreasonable, and that for this reason it should not be enforced. That there is a limitation upon the power of a municipal legislative body, which the courts have the right to enforce, and that an ordinance which is unreasonable in its terms is beyond the power of such legislative body to enact, is well settled. There can be no doubt, either, that where, upon the face of the ordinance, it is shown to be unreasonable, the question which the courts have to determine becomes purely a question of law. But that is not this case. In the present case the contention is that the ordinance is unreasonable, as shown by the testimony of the facts and circumstances; in other words, that, although the court would not be able to say on the face of the ordinance that it is unreasonable, yet because of the existence of certain facts, which it is claimed the testimony establishes in the case, the court should hold that the ordinance is unreasonable. These facts are not facts of which the court can take judicial notice, but are facts claimed to be proven in the case; and the question is, Who is to determine these facts? It may be conceded that the authori-

ties are not agreed upon the question, and it becomes necessary to look somewhat to the reason of the rule.

The rule is stated in 1 Dillon, Mun. Corp. (4th Ed.) § 327, as follows:

"Whether an ordinance be reasonable and consistent with the law or not is a question for the court, and not the jury, and evidence to the latter on this subject is inadmissible. But in determining this question the court will have regard to all the circumstances of the particular city or corporation, the object sought to be attained, and the necessity which exists for the ordinance."

This statement of the law is strictly accurate if it be limited to cases in which the question depends upon facts of which the court may take judicial cognizance. But there are cases which go further, and hold that, where the question of reasonableness depends upon facts, while it may be competent for the court to take testimony as to these facts, and to take them into consideration in determining the validity of the ordinance, the question is in no case a question for the jury; in other words, that it is to be determined as a question of law, and not as a question of fact. One of the strongest cases supporting this view is that of *Illinois Central R. Co.* v. *Whittemore*, 43 Ill. 420 (92 Am. Dec. 138). In that case it was said:

"It was proper to admit testimony, as was done; but, either with or without this testimony, it was for the court to say whether the regulation was reasonable, and therefore obligatory upon the passengers. The necessity of holding this to be a question of law, and therefore within the province of the court to settle, is apparent from the consideration that it is only by so holding that fixed and permanent regulations can be established. If this question is to be left to juries, one rule would be applied by them today and another tomorrow. In one trial a railway would be held liable, and in another, presenting the same question, not liable. Neither the companies nor passengers would know their rights or their obligations."

The reason assigned in this opinion appears to be the one upon which the rule rests so far as it has been adopted, viz., the idea that when, in a particular case, an ordinance is

determined to be unreasonable, that determination will con-
trol in all future cases that may arise under the ordinance,
whether the question arises between the same parties or
not.   If the reason of the rule fails, the rule should fail.
It is certainly anomalous to hold that A. may be concluded
in a proceeding between B. and C., to which A. is not a
party, when that judgment rests upon a determination by
some one of a question of fact.   The whole realm of
adjudicated cases may be searched in vain for another
instance of this character.   The very reason upon which
the rule rests refutes the rule.   So far from its being true
that, in a proceeding depending upon a question of fact,
future litigants should be finally concluded, the exact
reverse is true, and an ordinance which may be declared,
upon a certain state of facts proven to the court or jury,
to be invalid in a proceeding depending between A. and
B. in which there may be involved a trifling amount, can-
not be held to conclude C., who may have vested rights to
the amount of thousands or millions of dollars.   To illus-
trate:   Suppose in an action between third parties it had
been determined that the original franchise granted to this
defendant was invalid as wholly unreasonable; can the
vested rights of this corporation be said to have been
divested in a proceeding to which it was not a party?
Such a proposition shocks the sense of justice, and fortu-
nately we are not without authorities which have a direct
bearing upon this question.

In the case of *Pennsylvania R. Co.* v. *Mayor, etc., of
Jersey City*, 47 N. J. Law, 286, a proceeding was com-
menced for the purpose of having an ordinance of the city
declared invalid as unreasonable, and it was said:

"This proceeding in error seeks the abolition of this
ordinance *in toto*, and, as a whole, it is plainly not open
to the imputation of unreasonableness.   Its scope is to
put upon a proper footing the use of railroad trains within
the municipal bounds, and there is no pretense that it
presses unduly upon any of such companies, except that it
harasses the plaintiff in error in passing its numerous trains

across three certain streets near its terminal depot. But, conceding this allegation to be true, that the business of the plaintiff in error at this particular locality is by that ordinance unreasonably embarrassed and burthened, such a vice in the by-law would not render it generally, but only specially, inefficacious; that is, the court would not vacate the entire ordinance, but merely refuse to put it in effect in that part of it that was thus unreasonable."

And a somewhat analogous question has arisen in the federal courts. As is well understood, the federal courts have held that, under the fourteenth amendment, a statute of a State regulating freight or passenger charges may, if it be unreasonable in its terms, be held unconstitutional and void in its application to a particular case. But the Federal Supreme Court has held, as we shall see, that the determination of this question in a particular case does not conclude the question for all time as between parties standing in a different relation to the public authorities. This is well illustrated in the case of *Smyth* v. *Ames*, 169 U. S. 466 (18 Sup. Ct. 418). That was a case in chancery, and the question of the reasonableness of the statute as applied to the complainant was determined upon a full review of all the facts of the case. It was held that the statute, as applied to then conditions, was unreasonable. But it is significant that in the very case the court fully approve of the provision in the decree of the circuit court that the defendants, members of the board of transportation, might, "when the circumstances have changed so that the rates fixed in the said act of 1893 [Acts Neb. 1893, p. 164, chap. 24] shall yield to the said companies reasonable compensation for the services aforesaid," apply to the court by bill or otherwise, as they might be advised, for a further order in that behalf. If, then, it is possible that, as between the same parties who have litigated the reasonableness of a statute (or ordinance), the question may again be opened as a question of fact, how much more may it be said that, as between strangers to that litigation, the judgment depending upon a question of fact has not concluded them.

In the case of *Brooklyn Crosstown R. Co.* v. *City of Brooklyn*, 37 Hun, 416, it was said:

"The validity of every ordinance or by-law of a corporation which is not passed in strict compliance with statutory delegation of power depends upon its reasonableness, * * * and hence that point [the reasonableness of the ordinance] was a proper subject for judicial examination as a question of fact."

If, then, there is involved in the case a question of fact, how shall that question be determined? As I have endeavored to show, the reason assigned by some of the authorities why it should not be a question for the jury is a wholly insufficient one. Worse than that, it is a false reason, which leads to erroneous and unjust results. We are not wanting, however, in authority which sustains the rule which I have foreshadowed. In *Clason* v. *City of Milwaukee*, 30 Wis. 316, it was said:

"It is impossible for the court to determine whether or not the ordinance is reasonable and proper, in view of the object sought to be accomplished, without some evidence upon the subject. And we cannot see that it is a violation of any principle to submit these questions of fact to a jury as in other cases."

This case was followed by the case of *City of Austin* v. *Cemetery Ass'n*, 87 Tex. 330 (28 S. W. 528, 47 Am. St. Rep. 114), in which it was held that it is incumbent upon a party who alleges the invalidity of an ordinance as unreasonable to aver and prove the facts which make it so; that, if the facts be controverted, they must be determined by the jury; but that whether the facts relied upon show the ordinance to be unreasonable or not is a question for the court.

So, in *State* v. *Boardman*, 93 Me. 73 (44 Atl. 118, 46 L. R. A. 750), it was said:

"It is true that the question of the reasonableness of a by-law is for the determination of the court, and this conclusion does not take away from the court the determination of the question. Certain facts will have to be passed

upon by the jury.    But the standard upon the question of the reasonableness or otherwise of the by-law is established by the court."

In *Chicago & Grand Trunk R. Co.* v. *Wellman*, 143 U. S. 339 (12 Sup. Ct. 400), the question of the reasonableness of a statute fixing the maximum rate at two cents per mile was involved.    It was said:

"If the validity of such a law in its application to a particular company depends upon a question of fact as to its effect upon the earnings, may not the court properly leave that question to the jury, and decline to assume that the effect is as claimed ?    There can be but one answer to these questions."

The invalidity of the ordinance in the present case depended upon the ability of the defendant to establish certain facts.    This it undertook to do.    The case was tried without a jury.    The trial judge, however, stood in the position of a jury.    He found as a fact that the ordinance was not unreasonable.    It was then within the province of the defendant's counsel to call for a more specific finding of facts.    This they failed to do.    Doubtless better practice would have been to have had a specific finding upon the particular facts which are claimed to show the invalidity of the ordinance.    But the record is not so made up.    In my view, unless we are able to say that the testimony all tends in one direction, and that is to show the unreasonableness of the ordinance, the plaintiff in *certiorari* has not put itself in position to review the decision of the trial judge.    As I do not find the testimony all one way, I think the judgment should be affirmed.