PEOPLE *v.* GIBBS.

1. MUNICIPAL CORPORATIONS—AUCTIONEERS—POWER TO REGULATE.
   The city of Detroit had authority, under its charter, to enact an ordinance to license and regulate auctioneers and auctions held within its limits, and may prescribe such regulations as are necessary and appropriate in that connection to eliminate fraud and protect the public from annoyance and imposition.

2. SAME—REASONABLENESS—VALIDITY.
   Whether an ordinance intended for such purpose is reasonable and within the range of discretionary power conferred is a question for judicial construction.

3. SAME—POLICE POWER.
   Ordinances enacted in pursuance of this police power are primarily presumed to be valid, unless the contrary appears from their provisions.

4. SAME—CONSTITUTIONAL LAW—ORDINANCES—REASONABLENESS—AUCTIONEERS.
   To justify the State in interposing its authority in behalf of the public, it must be made to appear that the interests of the public generally, as distinguished from those of a particular class, require such interference and that the means are reasonably necessary for the accomplish-

ment of the purpose and are not unduly oppressive upon individuals. Arbitrary interference with private business is not permissible; nor may unusual or unnecessary restrictions be imposed upon lawful occupations.

5. SAME—MOTIVES.

But the motive of the legislature in enacting police regulations is not a proper subject of inquiry.

6. SAME—HOURS—TIME—CLOSING HOUR.

An ordinance of the city of Detroit, regulating the business of auctioneering, prohibiting fraud or improper methods of selling and prohibiting the holding of such sales after the hour of six p. m., or before eight a. m., is invalid as an unreasonable restraint upon a legitimate trade or occupation.

7. SAME—EVIDENCE—COMPETENCY.

Evidence is admissible to show the reasonable nature of an ordinance regulating a business or trade, and to show local conditions that render its enactment · necessary or proper.

Certiorari to the recorder's court of the city of Detroit; Connolly, J. Submitted January 21, 1915. (Docket No. 46.) Decided June 7, 1915.

Lipman A. Gibbs was convicted of violating a city ordinance. Reversed.

*William E. Tarsney* (*Richard I. Lawson*, of counsel), for the people.

*Doyle & Cameron*, for respondent.

STEERE, J. 'Defendant seeks here by certiorari to review and reverse on constitutional grounds a judgment rendered in the recorder's court of the city of Detroit convicting him of violating an ordinance of said city entitled "An ordinance to license and regulate auctioneers and auctions held within the city of Detroit." The particular provision of said ordinance, under which he was convicted (section 12*a*), so far as directly material here, reads thus:

"No such person doing business as a duly licensed auctioneer shall operate a public auction room, or sell goods at public auction, within the meaning of this ordinance, except on week days between the hours of 8 a. m. and 6 p. m. Any person convicted of a violation of the provisions of this section shall be fined," etc.—

with resulting imprisonment in case of failure to pay said fine.

Section 12 of said ordinance, with which appellant contends section 12a should be construed, is as follows:

"SEC. 12. Noises Prohibited. No bellman or crier, nor any drum or fife, or other instrument of music, nor any show signal or means of attracting the attention of the public, other than a sign or flag, shall be employed, or suffered or permitted to be used in connection with any auction sale at or near any place of such sale, or at or near any auction room."

The objections urged and argued against said conviction, as set out in appellant's brief, are as follows:

"(1) The court erred in refusing to rule that the power of the common council of the city of Detroit granted by the charter to license and regulate auctioneers is not sufficient authority to authorize the common council to prohibit auction sales entirely between the hours of 6 o'clock p. m. and 8 o'clock a. m.

"(2) The court erred in refusing to rule that section 12a of the ordinance in question when construed with section 12 thereof and other sections of said ordinance discloses great want of reasonableness and hence is invalid.

"(3) The court erred in refusing to rule that section 12a of the ordinance apart from its connection with section 12 is clearly unreasonable, unfair and partial in its operation, and hence invalid. It cannot be by its terms sustained as a legitimate exercise of the police power.

"(4) The court erred in refusing to rule that this ordinance is in violation of the Constitution of the United States and of this State."

186 Mich.—9.

We do not understand any serious question is or can be raised as to the general power of the city under its charter to enact an ordinance to license and regulate auctioneers and auctions held within its limits, and therein prescribe such regulations as are necessary and appropriate in that connection to eliminate fraud, and protect the public from annoyance and imposition.

Divested of auxiliary elaborations, the substance of defendant's grievance is that the provision of the ordinance prohibiting auction sales in the evening after 6 o'clock, during customary evening business hours, is unreasonable and invalid, and is beyond the city's power of regulation, which is limited to protection of public safety, health, and welfare, to which objects this prohibition has no real and substantial relation.

The facts in this record are few and concise, briefly establishing without dispute that defendant was a duly licensed auctioneer, and, on February 14, 1914, the same being a week day, did business as an auctioneer and sold goods at public auction after 6 p. m. at 51 Monroe avenue in said city.

This does not purport to be an ordinance for revenue or to prohibit, but one within the police power, enacted to license, regulate, and control for the public welfare a calling or occupation of that class recognized as peculiarly requiring surveillance for the reason that when unrestrained their inherent tendency is often towards dishonest and annoying methods, inimical to the quiet, good order and general welfare of a community. When rightly conducted, the business of an auctioneer is regarded not only as a legitimate calling, but often as a useful and important line of vending in the sum total of business activities. The question therefore arises: Does this provision of the ordinance pass the limit of the power of reasonable regulation?

In reviewing section 12*a*, which gives rise to the question, it is proper not only to take into consideration section 12, as urged by counsel for appellant, but also the entire ordinance and any fact or matter disclosed by the record which may throw light upon the contention. This ordinance, considered as a whole as originally enacted, is an unusually comprehensive, well worded, logically arranged, and readily understood piece of municipal legislation, keeping well within the scope of its title and the legislative power of the enacting body. It is confined and devoted strictly to the one general object and purpose of authorizing and regulating the business of auctioneering, and to that end licensing certain qualified persons to conduct auction sales, with the well known and generally understood evils attending such business when unrestrained, enumerated, and prohibited. It provides for licensing, as auctioneers, persons of good character, who must pay a stated license fee and give a bond in the sum of $1,000 to faithfully observe all provisions of applicable ordinances, with two freehold sureties, or a surety company, to be approved by the mayor, and imposes proper punishment for engaging in the business without a license. Among its salient restrictions are the following: The purchaser of jewelry of specified kinds at any auction held by a licensed auctioneer may within five days from the date of the sale return the same if not of the quality represented, when, upon demand, the auctioneer must return the purchase price of the article so purchased, he and his bondsmen being liable therefor; in case of refusal the auctioneer becomes liable to forfeit his license and pay a fine of from $25 to $100; as a further safeguard he is prohibited from closing the place of sale, for the purpose of avoiding an offer to return such articles, during the five days following such sale; substitution of any article in lieu of one sold; making

any false representation or statement as to the ownership or character of property offered for sale or as to the poverty of the owner; offering for sale goods, wares, and merchandise falsely representing or pretending them to be in whole or in part bankrupt stock, damaged goods or goods saved from fire; the making of any false representation as to the previous history or character of goods offered for sale; receiving for sale goods from any minor; "down-hill" selling, or offering an article at a high price and then offering the same at successive lower prices; conducting any auction sale of personal property in any street, avenue, alley, or public place in the city; and the use of bellmen, criers, musical instruments, etc., as specified in section 12 already quoted, are all strictly prohibited, with punishment by fine and cancellation of the license of any auctioneer violating any of these provisions.

With these safeguards thrown around the business, in what particular are the provisions of section 12a, prohibiting evening sales, related to, or necessary for, the preservation of public health, peace and safety? There is no evidence showing, and nothing is pointed out in this record which indicates what special wrong to the public would or could result from auctions during business hours after 6 p. m., when conducted according to the requirements of said ordinance, justifying their prohibition as a necessary police regulation. The most to be claimed is that such is to be inferred from the provisions of the enactment itself, because power to legislate upon the subject has been conferred upon the city council whose members are better able to judge the necessities to which local conditions give rise, and the discretion, or judgment, of that body rather than of the court should control.

Courts do not substitute their discretion for that of municipal authorities acting within the scope of dis-

cretionary powers conferred upon them; yet it is
settled text-book law that the question of whether an
ordinance is reasonable and within the range of con-
ferred discretionary power is always for the courts to
determine. 2 Dill. on Mun. Corp. (5th Ed.) § 589;
*Town of Lake View* v. *Cemetery*, 70 Ill. 191 (22 Am.
Rep. 71) ; *People* v. *Railway*, 134 Mich. 682.

"Where the power to legislate upon a given subject
is conferred, but the mode of its exercise is not pre-
scribed, the ordinance passed in pursuance thereof
must be a reasonable exercise of the power, or it will
be pronounced invalid." *People* v. *Armstrong*, 73
Mich. 288 (41 N. W. 275, 2 L. R. A. 721, 16 Am. St.
Rep. 578).

"It is quite possible that some things have a greater
tendency to produce danger and disorder in the cities
than in smaller towns or rural places. This may jus-
tify reasonable precautionary measures, but noth-
ing further; and no inference can extend beyond the
fair scope of powers granted for such a purpose, and
no grant of absolute discretion to suppress lawful
action altogether can be granted at all. * * * It
is lawful to provide for dealing with the mischief, but
it is not lawful to go beyond reasonable measures and
precautions in anticipating it." *Matter of Frazee*, 63
Mich. 396 (30 N. W. 72, 6 Am. St. Rep. 310).

This ordinance in its general scheme is within the
grant of police power conferred upon the city to
license and regulate the business of auctioneering,
and such ordinances are primarily presumed to be rea-
sonable unless the contrary appear on their face; but
if the inherent character of any of its provisions ap-
pear upon the face of an ordinance to be unreasonable,
or if upon a state of facts shown it so appears, the
courts must declare such unreasonable provisions
void. The only state of facts shown here is that re-
spondent, a duly qualified and licensed auctioneer,
therefore of good character and under bonds, sold
goods at auction in a certain place of business after

6 o'clock in the evening. No other misconduct or violation of the ordinance is charged or shown, and presumably the business was otherwise conducted honestly, without fraud or misrepresentation as to the goods offered and sold, off the street, without bellman, crier, or other prohibited noises and in general compliance with restrictions specified in the ordinance. In what manner the business so conducted did, or could, at that particular time of the day, annoy or disturb the public, or menace the peace, good order, health, or welfare of the community more than before 6 o'clock, or more than other lines of business carried on at the same time, is not shown or suggested.

The provision in question (section 12a) is an amendment to a municipal by-law enacted under a delegated police power of the State granted to license and regulate. Its validity is to be tested by the following limitations as stated by Justice Brown, defining the police power of the State in *Lawton* v. *Steele,* 152 U. S. 133, 137 (14 Sup. Ct. 499) :

"To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

The contention that this amendment was enacted for the purpose of protecting or benefiting special interests and was inspired by other motives than guarding the general welfare is immaterial and cannot be considered here. Courts are not concerned with the

motives which actuate members of a legislative body in enacting a law, but in the results of their action. Bad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives.

"Nothing is better settled than the rule that the motives of a legislature or of the members cannot be inquired into, for the purpose of determining the validity of laws." *People* v. *Gardner*, 143 Mich. 104 (106 N. W. 541).

Entirely apart from all question of motive we are impressed that, with the meager facts shown here, and upon its face, section 12*a*, necessarily treated as a part of the ordinance and considered in that relation, is a discriminatory and unreasonable interference with the freedom of trade beyond any necessities of the case, does not appear upon its face, and is not shown to be a necessary means to an end within the police power of public protection, and is therefore without the legitimate field of reasonable regulation.

Auctioneering, honestly conducted, is a business within the legitimate scope of trade, traffic or merchandizing. When by ordinance all fraud and misrepresentation in effecting sales and when all questionable methods of attracting attention or conducting sales, which are recognized as likely to develop in that special line of business, and which may tend to public annoyance, imposition, and disturbance of public peace and safety of a community, have been guarded against and prohibited, further restriction extends beyond the fair scope of powers granted to regulate for the protection of society. Though no directly controlling case in this court is found, we are satisfied that the reasoning and views expressed in cases where plainly analogous principles are involved tend towards the foregoing conclusions.

Cases cited from other jurisdictions where the question has arisen cannot be entirely reconciled. In *Butte* v. *Paltrovich,* 30 Mont. 18 (75 Pac. 521, 104 Am. St. Rep. 698), an ordinance which made it unlawful to keep open and transact business in a pawnshop, loan office, or second-hand store after 6 o'clock in the evening, except the evening preceding a legal holiday, was sustained as within the police power. That short ordinance, consisting of but one section, besides a concluding penal and repealing clause, contained no other regulating provisions, and it was shown that under the circumstances there was no discrimination in the particular complained of, as all other places in that city were accustomed to close for the day at 6 p. m.

In *Hyman* v. *Boldrick,* 153 Ky. 77 (154 S. W. 369, 44 L. R. A. [N. S.] 1039), a short ordinance regulating pawnbrokers, second-hand dealers, junk merchants or junk dealers, similar in its provisions to the Montana case, was held to be a reasonable restriction. In support of and disclosing reason for the restriction it was shown that in the city (Louisville) there were many petty thieves difficult of detection in a city of its size, that:

"Thieves resort to second-hand stores especially at night to dispose of stolen goods, and as they do this under cover of darkness, it is almost impossible to apprehend them. Housebreakers and other thieves follow their calling usually under cover of darkness and when they get booty, try to dispose of it as soon as possible. If the second-hand stores are not allowed to remain open at night, they will be more easily detected, as they can safely carry things in the darkness which the police could detect in the daylight, and when property has been once sold to a second-hand dealer it is often difficult to find the thief." 44 L. R. A. (N. S.) 1040.

The case at bar is destitute of any proof even sug-

gesting any reason for the provision in question. It is recognized in this State that evidence bearing upon the reasonableness or unreasonableness of an ordinance, as applied to the subject-matter or to local conditions, is admissible (*People* v. *Railway,* 134 Mich. 682 [97 N. W. 36, 63 L. R. A. 746, 104 Am. St. Rep. 626]) ; but no such evidence was produced here.

Most directly analogous in facts to this case of any cited in briefs, or found, is *Hayes* v. *City of Appleton,* 24 Wis. 542, in which an ordinance that no licensed auctioneer should "sell any goods, wares, or merchandize after sundown," was held upon its face to be unreasonable as not manifesting any beneficial purpose within the meaning of the charter; therefore unconstitutional and void. What other provisions the ordinance contained is not shown by the published report. It was there said in part:

"It is not shown in the case what evil was to be prevented or good promoted by the passage of the ordinance in question; nor can we judicially see that any restriction of the kind was necessary. No cause for it, whether good or bad, is even suggested in the brief submitted by counsel for the city; and it is impossible for us to conjecture that any sufficient one existed. * * * And so, too, it might be proper to restrain such sales on particular days or at particular places; or, if the manner of conducting them was particularly objectionable, to prescribe how they should be conducted."

Here the ordinance does prescribe the manner of conducting them, and that the place shall not be in a public street or alley.

In harmony with and sustaining the general principles governing the *Hayes Case,* Justice Marshall later, in *State* v. *Redmon,* 134 Wis. 89 (114 N. W. 137, 14 L. R. A. [N. S.] 229, 126 Am. St. Rep. 1003, 15 Am. & Eng. Ann. Cas. 408), exhaustively discussed

the limitations, rules, and controlling elements of the police power, under which citizens may ·be restrained for the general good in their pleasures and business activities. This case was cited with approval and freely quoted from in *Daugherty* v. *Thomas*, 174 Mich. 371 (140 N. W. 615, 45 L. R. A. [N. S.] 699, Am. & Eng. Ann. Cas. 1915A, 1163).

We are unable to discern from this record that section 12a was proper or necessary for the public welfare, or the protection of society; it does not appear, and certainly is not a matter of common knowledge, that the business of a licensed auctioneer of good character, under bond, is a menace to public peace, health, or safety when properly conducted, in his place of business, during general business hours, or that the excluded hours would be more disturbed by such business, than those which are not. This attempt to prohibit it during a portion of business hours without any disclosed, special reason therefor, impresses us as a discrimination in restraint of trade, and an unreasonable regulation, beyond the limits of police power conferred upon the municipality to license and regulate.

The judgment is reversed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.