𝖘𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

## CITY OF ROANOKE v. G. G. FISHER.

September 20, 1923.

1. ORDINANCES—*Ordinances Regulating Business—Discrimination—Equal Protection of the Laws.*—Under the general welfare clause of the charter of a municipal corporation empowering the council to define, prohibit, abate, or prevent things detrimental to the welfare of the city, the council has power to enact ordinances regulating the conduct of particular businesses, such for example as an ordinance prohibiting the sale of diamonds, watches, jewelry, etc., after 6 P. M., unless it appears from the ordinance itself that it is unreasonable, in that, in its application, it denies the equal protection of the laws guaranteed by the Fourteenth Amendment of the Federal Constitution.

2. ORDINANCES—*Ordinances Regulating Business—Discrimination—Equal Protection of the Laws.*—An ordinance regulating the conduct of business does not deny the equal protection of the laws, so as to become unreasonable, merely because it applies to a particular business therein named. A reasonable classification is permitted by which a particular business may be singled out and regulated by the ordinance from a general class of businesses, which may be alike in general, the remainder of which being left unregulated, provided the discrimination is made upon some reasonable basis; and the latitude allowed in the exercise of such discretionary power of classification is very great.

3. ORDINANCES—*Reasonableness—Unreasonableness Must Clearly Appear.*—Mere difference, or equipoise of opinion on the subject will not justify a court in annulling an ordinance as unreasonable; it must clearly appear from the ordinance that it is unreasonable to justify a court in holding it invalid.

4. ORDINANCES—*Validity—Evidence—Motives which Induce Enactment.*—Evidence *aliunde* is inadmissible to assail the motives which induced the enactment of an ordinance, for the purpose of determining its validity. Although such evidence is admissible to sustain the validity of the ordinance, and often has decisive force.

5. ORDINANCES—*Validity—Opening and Closing of Business.*—Ordinances, prescribing hours for the opening and closing of designated kinds of business, enacted in good faith, which are reasonable, non-discriminatory (observing natural and fair classification), conform to the

laws and public policy of the State, and emanate from sufficient power, are valid, constitutional and enforcible.

6.   AUCTIONS AND AUCTIONEERS—*Validity of Ordinance Prohibiting Sale of Jewelry, etc., after 6 o'clock—Case at Bar.*—A city ordinance prohibited auction sales of diamonds, watches, jewelry, etc., between the hours of 6 P. M. and 8 A. M.   The city charter conferred upon the city council the power "generally to define, prohibit, abate, suppress, or prevent all things detrimental to the   *   *   welfare of the inhabitants of the city."   There was uncontradicted evidence that the public had been frequently deceived and defrauded by the auction of such articles under artificial lights.

*Held:*   That the ordinance was valid, and that the situation furnished a reasonable basis for the discrimination contained in the ordinance.

Appeal from a decree of the Corporation Court of the city of Roanoke.   Decree for complainant.   Defendant assigns error.

*Reversed and final decree.*

This suit in equity was instituted in November, 1922, by the appellee, G. G. Fisher, conducting the business of selling jewelry, etc., at auction, under the license of a general auctioneer, which did not expire until April 30, 1923, duly granted under section 13 of the ordinances of the appellant, the city of Roanoke, imposing city license taxes, in force prior and up to October 13, 1922, seeking to enjoin the enforcement by the city of section 4 of an ordinance adopted by the city on the last named date, amending and re-enacting said section 13, on the ground that such section of the amended ordinance is void, because no valid legislative authority to pass it had been conferred on the city.

Said section 4 provides as follows:

"(4).   No person or persons conducting the business of selling diamonds, watches, clocks, jewelry, silverware, oriental rugs, bric-a-brac and such like articles at public auction, shall conduct such business between the hours of six (6) P. M. and eight (8) A. M."

The amended ordinance contains no other provision regulating the business mentioned in said section 4 in any other way than as therein mentioned.   A subsequent section of such amended ordinance imposes a penalty for conducting the business in violation of any of its provisions.

The city, to sustain the ordinance, relied on the general and necessarily implied powers conferred by the legislature upon the city by the provisions of the charter thereof, as amended by act of Assembly approved March 10, 1920, which, so far as material to be stated, conferred upon the city council the power "generally to define, prohibit, abate, suppress, or prevent all things detrimental to the   *   *   welfare of the inhabitants of the city."

And the city introduced in evidence the affidavits of a number of retail jewelers and other merchants of the city which were as follows:

"*   *   * that they are all familiar with the kind and character of goods sold by auctioneers and others in the auction sales heretofore had in the city of Roanoke, Virginia, and elsewhere in the State, as pertains to jewelry, bric-a-brac and other articles of vertu; that such articles cannot be properly examined or their value determined under artificial lights, especially under high-power lights, and especially articles commonly known as diamonds, and jewelry; that articles of this class when sold after usual hours of business and especially under high power electric lights, and especially at auction, are a particular kind and class of article as to which the purchase thereof the public will be, is, and has been defrauded and misled.   That it is more important and necessary for the protection of the purchaser that he be granted and afforded a reasonable and proper opportunity of inspection under reasonable

and ordinary conditions and lighting as to articles of jewelry than any other form of merchandise, and that unless such opportunity is afforded the purchaser is easily defrauded and misled in his purchase.   That the undersigned believe that in sales of diamonds, watches and other articles of jewelry, bric-a-brac and fancy articles of such kind and description when sold at public auction, after business hours and under artificial lights, that the public of this city and other cities have heretofore been frequently deceived and defrauded, and that furthermore, such sales have been and are frequently conducted by irresponsible parties who have only come into the cities for temporary purposes, have deceived the public by false and fraudulent sales and have then removed from the jurisdiction of the courts or have proved unreliable and insolvent, and that the public has been therefore and thereby damaged."

·There were no counter affidavits or testimony for the plaintiff controverting the statements contained in such affidavits.

On the hearing on the merits the court below entered the decree under review, which awarded the injunction, on the ground that said section 4 of the amended ordinance aforesaid is an unreasonable and unwarranted exercise of its police power by the city, and holds that this fact appears from the ordinance itself.

*Horace M. Fox, R. C. Jackson* and *W. J. Henson*, for the appellant.

*C. S. McNulty*, for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The decision of the case turns upon the answer to the following question:

[1] 1. Is the section of the ordinance, the enforcement of which is enjoined by the decree under review, non-discriminatory, in contemplation of law—that is, does it observe a natural and fair classification?

The question must be answered in the affirmative.

The general proposition is well settled that the legislative authority to adopt an ordinance such as that in question is conferred upon a municipality by charter powers of regulation, given by such a general welfare clause as that contained in the charter of the city in the instant case, unless it appears from the ordinance itself that it is unreasonable, in that, in its application, it denies the equal protection of the laws guaranteed by the fourteenth amendment of the Federal Constitution. The following authorities, among the many which might be cited on the subject, so hold. 7 McQuillin Mun. Corp., sec. 730, and cases cited; *American Tobacco Co.* v. *Danville,* 125 Va. 22-23, 99 S. E. 733, and cases cited; *Hopkins* v. *Richmond,* 117 Va. 718, 86 S. E. 139, Ann. Cas. 1917D, 1114, and cases cited; *Gundling* v. *Chicago,* 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725; *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 33 Sup. Ct. 441, 57 L. Ed. 730.

[2, 3] It is also well settled that such an ordinance does not deny the aforesaid equal protection of the laws, so as to become unreasonable, merely because it applies to a particular business therein named. A reasonable classification is permitted by which a particular business may be singled out and regulated by the ordinance from a general class of businesses, which may be alike in general, the remainder of which being left unregulated, provided the discrimination is made upon some reasonable basis; and the latitude allowed

in the exercise of such discretionary power of classifi-
cation is very great.    Mere difference, or equipoise of
opinion on the subject will not justify a court in annul-
ling an ordinance as unreasonable; it must clearly ap-
pear from the ordinance that it is unreasonable to
justify a court in holding it invalid.    6 R. C. L., sec.
369, pp. 373-4 and cases cited; 7 McQuillin Mun. Corp.,
sec. 730; *Chicago, etc., R. Co.* v. *McGuire*, 219 U. S.
549, 31 Sup. Ct. 259, 55 L. Ed. 328; *Jeffrey Mfg. Co.*
v. *Blagg*, 235 U. S. 571, 35 Sup. Ct. 167, 59 L. Ed. 364;
*Central Lumber Co.* v. *South Dakota*, 226 U. S. 157, 33
Sup. Ct. 66, 57 L. Ed. 164; *Baccus* v. *Louisiana*, 232
U. S. 334, 34 Sup. Ct. 439, 58 L. Ed. 627; *Hyman* v.
*Boldrick*, 153 Ky. 77, 154 S. W. 369, 44 L. R. A. (N. S.)
1039; *Williams* v. *Arkansas*, 217 U. S. 79, 30 Sup. Ct.
493, 54 L. Ed. 673, 18 Ann. Cas. 865; *Patsone* v.
*Pennsylvania*, 232 U. S. 138, 34 Sup. Ct. 281, 58 L.
Ed. 539.

In *Chicago, etc., R. Co.* v. *McGuire, supra* (219 U. S.
549, 31 Sup. Ct. 259, 55 L. Ed. 328), the Supreme
Court said this:    "The principle involved in these de-
cisions is that where the legislative action is arbitrary
and has no reasonable relation to a purpose which it is
competent for government to effect, the legislature
transcends the limit of its power in interfering with
liberty of contract; but, where there is reasonable re-
lation to an object within the governmental authority,
the exercise of the legislative discretion is not subject
to judicial review."

In *Jeffrey Mfg. Co.* v. *Blagg, supra* (235 U. S. 571,
35 Sup. Ct. 167, 59 L. Ed. 364), the Supreme Court
said this:    "This court has many times affirmed the
general proposition that it is not the purpose of the
fourteenth amendment in the equal protection clause
to take from the States the right and power to classify

the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority." (Citing U. S. cases). "That a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the legislature must be allowed a wide field of choice on determining the subject matter of its laws, what shall come within them and what shall be excluded."

In *Patsone* v. *Pennsylvania, supra* (232 U. S. 138, 34 Sup. Ct. 281, 58 L. Ed. 539), this is said by the Supreme Court: "We start with the general consideration that a State may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named."

In *Central Lumber Co. v. South Dakota, supra* (226 U. S. 157, 33 Sup. Ct. 66, 57 L. Ed. 164), this is said by the Supreme Court: "What we have said makes it unnecessary to add much on the second point, if open, that the law is made in favor of regular established dealers. But the short answer is simply to read the law. It extends its force also to those who intend to become such dealers. If it saw fit not to grant the same degree of protection to parties making a transitory incursion into the business, we see no objection."

In *Baccus* v. *Louisiana, supra* (232 U. S. 334, 34 Sup. Ct. 439, 58 L. Ed. 627), the Supreme Court held that the State had the power to prohibit the sales by itinerant vendors of any drug, nostrum, ointment or application of any kind intended for the treatment of any disease or injury, while allowing the sale of such articles by other persons.

[4] It is likewise well settled that evidence *aliunde* is inadmissible to assail the motives which induced the enactment of an ordinance, for the purpose of determining its validity. *People* v. *Gibbs*, 186 Mich. 127, 152 N. W. 1053, 1055, Ann. Cas. 1917B, 830; *Gardner* v. *Bluffton*, 173 Ind. 454, 89 N. E. 853, 90 N. E. 898, 1912A Ann. Cas. 713; 7 McQuillin, sec. 732. Although such evidence is admissible to sustain the validity of the ordinance, and often has decisive force.

On the subject of the validity of an amendment of a city ordinance attempting to regulate the hours during which all auctioneers were thereby forbidden to conduct public auction sales or to sell goods at public auction, in *People* v. *Gibbs*, just cited, this is said: "The contention that this amendment was enacted for the purpose of protecting or benefiting special interests, and was inspired by other motives than guarding the general welfare, is immaterial and cannot be considered here. Courts are not concerned with the motives which actuate members of a legislative body in enacting a law, but in the results of their action. Bad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives."

[5] In accordance with the above mentioned general principles it has been uniformly held, as stated in 7 McQuillin, sec. 964, that "Ordinances, prescribing

hours for the opening and closing of designated kinds of business, enacted in good faith, which are reasonable, non-discriminatory (observing natural and fair classification), conform to the laws and public policy of the State, and emanate from sufficient power, are valid, constitutional and enforcible."

It is held in *State* v. *Bates*, 101 Minn. 301, 112 N. W. 67, that a city ordinance, adopted under the power to license and regulate auctioneers (both of which powers were also held by the appellee city in the instant case), which altogether forbade auctioneers, although duly licensed, "to conduct any auction sale of jewelry or watches" under their license, is valid. In the opinion of the court in that case this is said: The question, then, is whether the ordinance is a reasonable regulation of auction sales, or an arbitrary prohibition of a material part of the business of an auctioneer, and, therefore, unreasonable and void. The regulation and policing of a business include reasonable and necessary limitations and restraints upon the business. Now auction sales of watches and jewelry are often mere schemes for trapping and defrauding the unwary, and a large discretion must be allowed the city council in determining what restraints or prohibitions it is necessary to impose upon the general business of a licensed auctioneer to effectually regulate and police the business. If there be any fair doubt on the question of the reasonableness of the ordinance, it must be resolved in favor of its validity; for the courts will not substitute their discretion for that of the municipal authorities. *In re Wilson*, 32 Minn. 146, 19 N. W. 723. We are of opinion that the restrictions and prohibitions of the ordinance in question are not unreasonable and hold that its enactment by the city council was authorized by the charter of the city.

"The claim that the ordinance is invalid because it is 'discriminatory as against a certain business within a certain class' cannot be sustained. True it is that the ordinance, as a means of policing and regulating the general business of an auctioneer, prohibits the conducting of auction sales of jewelry and watches; but such special sales are liable to be attended with great abuses and to result in cheating and defrauding the unsophisticated, which is not the case with the general business of an auctioneer. The ordinance applies equally to all (such) auction sales within the city and is not discriminatory and we hold it valid."

It is held in *Mogul* v. *Gaither*, 142 Md. 380, 121 Atl. 32, that an ordinance of the city of Baltimore is valid, which prohibits the sale "at public auction" of "any gold, silver, plated ware, precious stones, watches, clocks, or jewelry" by any one, except that it allows such sales under certain conditions by those who may have been continuously in business in the city as merchants dealing in such articles for the period of a year next preceding the sales—not allowing such sales by others or by merchants who have not been in such business, or not in it for such length of time. In the opinion of the court this is said: "*  *  it is apparent that auction sales of the class prohibited may be attended with much greater risk to the public than auction sales permitted upon the conditions named, and that the classification made by the ordinance is not an arbitrary one, but one that has a reasonable relation to the object sought to be accomplished by it."

It is also held in *City of Buffalo* v. *Marion*, 13 Misc. Rep. 639, 34 N. Y. Supp. 945, that an ordinance of the city adopted under the municipal authority to license and regulate auctioneers, which prohibited "the sale of watches at auction after 6 o'clock in the evening under a penalty of $50.00," is a valid ordinance.

[6] There is evidence in the instant case to the effect that the public have, before the passage of the amended ordinance in question, been frequently deceived and defrauded by the auction sales of such articles as are mentioned in such ordinance, after usual business hours and under artificial lights; and that this is likely to occur if such sales are allowed, for the reasons that, it is more important and necessary for the protection of the purchaser that he be afforded a reasonable opportunity of inspection of such articles, under ordinary conditions and lighting, than of other forms of merchandise; that unless such opportunity is afforded, the purchaser is easily defrauded and misled in his purchase; and that such sales are frequently conducted by irresponsible parties who have come into the city for temporary purposes only, who deceive the public by fraudulent sales and then remove from the jurisdiction of the court or prove to be unreliable and insolvent, whereby the public are irreparably injured.    In view of this evidence of facts demonstrated by experience in the city in question, we are of opinion that, in singling out the sales in question and forbidding them between the hours named, while not forbidding other auction sales, or sales of the same articles by those conducting the usual business of jewelers, or of other merchants, such discrimination in the ordinance in question was made upon a reasonable basis.    While it is true no doubt, that frauds may occur in sales made of such articles otherwise than at auction during the hours in question, the evidence referred to (which is not controverted) shows, and it is, indeed, as we think, a matter of common knowledge, that frauds, and more especially irreparable injury to the public, are more likely to occur in auction sales of such articles after the usual hours of business and by artificial light than in the case

of other sales of the same character of goods. This situation furnishes a reasonable basis for the discrimination contained in the ordinance. And, since the ordinance is applicable alike to all who may conduct the business of making the forbidden sales within the territorial limits of the city, we are of opinion, under the settled principles of law above referred to, that the ordinance is valid.

Only two cases of specific holdings are cited for the appellee as at variance with the conclusion we have reached above, and those are the case of *David Rauch* v. *City of Norfolk*, decided in November, 1914, by the circuit court of the city of Norfolk, and the case of *People* v. *Gibbs*, *supra* (186 Mich. 127, 152 N. W. 1053).

In the case of *Rauch* v. *City of Norfolk*, the ordinance was as follows: "No personal property of any kind whatever shall be sold at auction between 6:00 P. M. and 8:00 A. M."—a provision being added imposing a penalty for any violation of the ordinance.

The sales which were being made by the plaintiff, Rauch, were auction sales of jewelry, within the forbidden hours, but the bill assailed the ordinance as a whole as in conflict with the fourteenth amendment of the Federal Constitution; and the validity of the ordinance depended, of course, upon the validity of its provisions forbidding the sale of all personal property at auction between the hours named.

The case was heard upon the bill, the answer of the city and the depositions in behalf of the plaintiff. The city introduced no evidence; and the court held the ordinance to be invalid.

The case is, therefore, distinguishable from the case before us, both by the fact that there was no evidence tending to show that experience in the city of Norfolk had demonstrated that there was any greater evil result

attending auction sales, as compared with other sales, of all personal property, during the forbidden hours, to furnish the basis for the discrimination contained in the ordinance; and the court may properly have felt that there was nothing of which it had judicial knowledge which could furnish a reasonable basis for such a discrimination. The ordinance was much broader and materially different in its classification from that of the ordinance in the instant case. If the ordinance involved in that case had limited its provisions to forbidding the sales of jewelry, during the forbidden hours, the case would have been a very different one and more like that now before us; but even then it would have differed in the particular that there was an absence of any evidence of the result of experience in that particular locality as having furnished a reasonable basis for the classification, which is present in the case before us.

The same is true of the case of *People* v. *Gibbs*. In that case the ordinance provided that "no person doing business as a duly licensed auctioneer shall operate a public auction or sell goods at public auction, * * * except on week days between the hours of 8 A. M. and 6 P. M.;" and provided a penalty for so doing. It does not appear what character of property was being sold at public auction in that case. But the classification was the same as in the ordinance involved in the *Rauch Case*—much broader and materially different from that of the ordinance involved in the instant case. Moreover, there too, there was an entire absence of evidence to sustain the classification made by the ordinance as having any reasonable basis for its discrimination; and upon this lack of evidence the court, in its opinion, comments more than once.

Further: The ordinance involved in *People* v. *Gibbs* contained other very elaborate and stringent provisions,

tending to safeguard the public from the result of fraudulent sales, such as requiring the person to be of good character in order to obtain an auctioneer's license, the giving of a $1,000.00 bond, with two freehold sureties or a surety company, to be approved by the mayor; allowing purchasers of jewelry of specified kinds to return the goods within five days, if not of the quality represented, when, on demand, the auctioneer must return the purchase price, he and his bondsmen being liable therefor; and, in case of refusal of the auctioneer, to forfeit his license and pay a fine of $25.00 to $100.00; prohibiting the closing of the place of sale for the purpose of avoiding an offer to return such articles during the five days following such sale; forbidding substituting any article in lieu of the one sold, or making any false representations or statements as to the ownership or character of property offered for sale, or as to the poverty of the owner, or offering for sale goods, wares and merchandise falsely representing or pretending them to be, in whole or in part, bankrupt stock, damaged goods or goods saved from fire, etc., etc. The court held that such provisions were sufficient to reasonably safeguard the public from fraud and the injurious result thereof, without the provisions restricting the business to certain hours; so that that restriction was not necessary, and had no reasonable basis to support its discrimination.

For the reasons above stated, we feel constrained to reverse the decree under review and enter final decree dismissing the bill, at the costs of the appellee.

*Reversed and final decree.*