# STANLEY MOGUL

### vs.

## CHARLES D. GAITHER, Commissioner of Police.

*City Ordinance—Sufficiency of Title—Auction Sales of Jewelry—Class Legislation.*

Baltimore City Ordinance 684, approved March 3rd, 1922, entitled "An ordinance to prohibit public auction sales of gold, silver, plated ware, precious stones, watches, clocks, or jewelry," is not invalid because the exemption in the body of the ordinance of certain auction sales of such property is not referred to in the title. pp. 384-386

Baltimore City Ordinance 684, approved March 3rd, 1922, prohibiting public auction sales of gold, silver, plated ware, precious stones, watches, clocks, or jewelry, does not, in exempting from such prohibition sales of the stock on hand of any person or corporation that shall, for the year preceding such sale, have been continuously in business in such city as a merchant dealing in such articles, does not make an arbitrary and unreasonable class distinction between those engaged in the jewelry business continuously for one year and those who have not been so engaged for that length of time, so as to invalidate the ordinance. pp. 387, 389

It is only when the classification of subjects of legislation is arbitrary and unreasonable that the classification can be declared by the courts to be beyond the legislative authority, as denying the equal protection of the laws. p. 388

*Decided January 11th, 1923.*

Appeal from the Circuit Court No. 2 of Baltimore City (STEIN, J.).

Bill by Stanley Mogul, trading as Stanley & Company, against Charles D. Gaither, Commissioner of Police of Bal-

timore City.  From a decree for defendant, plaintiff appeals.
Affirmed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, URNER, ADKINS, and OFFUTT, JJ.

*William Curran* and *E. Milton Altfeld,* submitting on
brief, for the appellant.

*Alexander Armstrong, Attorney General,* with whom was
*Allan H. Fisher, Assistant Attorney General.* on the brief,
for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appellant filed in the Circuit Court No. 2 of Balti-
more City a bill of complaint alleging that he was engaged in
the retail jewelry business at 107 North Gay Street, in Bal-
timore City, which property was condemned by the city to
make room for "the proposed civic center," and in order that
he might retain his trade and business, which he had estab-
lished through much toil and effort, he had moved his stock
and belongings to 314 West Baltimore Street, from which
point he has conducted auction sales, as he had done at vari-
ous times at his former place of business, said sales being
conducted by a licensed auctioneer of Baltimore City; that
the defendant, the Police Commissioner of Baltimore City,
through his agents, has attempted to hinder, prejudice, molest
and interfere with his business by threatening to annoy and
disturb the peace of persons who may visit his jewelry store
for the purpose of attending the "periodic auction sales" con-
ducted by him; that on the 13th of March, 1922, the defend-
ant, through his agents, arrested the plaintiff and charged
him with violating city ordinance No. 684, approved March
3rd, 1922, and that he was held "for the action of the grand
jury in $100 bond."  After setting out the ordinance re-
ferred to, the bill further alleges that, notwithstanding said
ordinance provides that "such sale at public auction of the

stock on hand of such merchant or merchants shall be held on successive days, Sundays and legal holidays excepted, and shall not continue for more than thirty days in all within the period of one year," the defendant, with knowledge of the above provision of the ordinance, ordered his arrest and threatened to interfere with his auction sales in disregard of his right to continue such sales for the period of thirty days from the date of the approval of the ordinance; that he is advised that the action of the defendant, based on said ordinance, tends to deprive him of the use and enjoyment of his property guaranteed to him by the Constitution of this State and the Constitution of the United States, and that said ordinance is unconstitutional and void (1) because it is contrary to section 1 of article 14 of the Constitution of the United States; (2) because it is contrary to article 23 of the Declaration of Rights, and (3) because the title of the ordinance is bad in that it does not sufficiently describe its subject as required by "section 29, article 3 of the Constitution" of this State and is misleading. The prayers of the bill are, (*a*) that "the validity of said ordinance may be determined"; (*b*) that the defendant, and those acting under him, may be restrained from interfering with the plaintiff in the conduct of his said auction business; (*c*) that the defendant and those acting under him may be restrained from interfering with the plaintiff's business "during the period from the date of the approving of the ordinance, to wit: March 3rd, 1922, and until thirty days thereafter," and (*d*) for general relief.

The defendant demurred to the bill, and this appeal is from the decree of the court below sustaining the demurrer and dismissing the bill.

The ordinance in question, which is set out in the bill, is as follows:

"No. 684.

"An ordinance to prohibit the sale at public auction
of any gold, silver, plated ware, precious stones,
watches, clocks or jewelry.

"Section 1.  Be it ordained by the Mayor and City
Council of Baltimore, That it shall be unlawful for
any person or persons or corporation to sell, dispose of,
or offer for sale, in the City of Baltimore, at public
auction, or to cause or permit to be sold, disposed of,
or offered for sale, in the City of Baltimore, at public
auction, any gold, silver, plated ware, precious stones,
watches, clocks or jewelry, whether the same shall be
their own property or whether they sell the same as
agents or employees of others; provided, however, that
this auction shall not apply to judicial sales or sales
by executors or administrators nor to sales by or on
behalf of licensed pawnbrokers of unredeemed pledges
in manner provided by law, nor to the sale at public
auction of the stock on hand of any person or persons
or corporation that shall, for the period of one year
next preceding such sale, have been continuously in
business in the City of Baltimore as a retail or whole-
sale merchant of gold, silver, plated ware, precious
stones, watches, clocks or jewelry; provided, further,
that such sale at public auction of the stock on hand
of such merchant or merchants shall be held on suc-
cessive days, Sundays and legal holidays excepted, and
shall not continue for more than thirty days in all
within the period of one year.

"Section 2.  Be it further ordained, That any per-
son or persons or corporation convicted of a violation
of the preceding section shall be fined the sum of
$10.00 for the first offense and $20.00 for every sub-
sequent offense.  Each separate sale, at public auc-
tion, of an article or articles of gold, silver, plated
ware, precious stones, watches, clocks or jewelry in
violation of the preceding section shall constitute a
separate offense hereunder.

"Section 3.  And be it further ordained, That this
ordinance shall take effect from the date of its pas-
sage."

The contentions of the appellant in this Court are, as
stated in his brief, that the ordinance is unconstitutional and

void, "1. Because the object and content of said ordinance
are not expressed or described in the title * * * as is required
by section 221 of the Charter of the City (Weeks' ed.)," and
"2. Because * * * it makes unreasonable and arbitrary class
distinctions in violation of the Fourteenth Amendment of the
Federal Constitution."

Section 221 of the Charter provides that "Every ordinance
enacted by the city shall embrace but one subject, which shall
be described in its title." We said in *Baltimore* v. *First M.
E. Ch.*, 134 Md. p. 603: "The general rules of construction
which govern in the interpretation of acts of the Legislature
are applicable to legislative acts of a municipal corporation
(*State* v. *Kirkley*, 29 Md. 85), and no good reason can be
assigned why the rules governing the courts in determining
whether an act has been passed in accordance with the pro-
visions of the Constitution should not be applied in deter-
mining whether an ordinance has been passed in accordance
with the provisions of the charter of a municipal corpora-
tion." See also *Baltimore* v. *Wollman*, 123 Md. 310, and
*Bouis* v. *Baltimore*, 138 Md. 284. As the provision referred
to of section 221 of the Charter of Baltimore City is similar
to the provision of section 29 of Article 3 of the Constitution
of this State, the appellant insists that the case of *Nutwell* v.
*Anne Arundel County*, 110 Md. 667, is conclusive of the
question here. But we cannot adopt that view. In that case
the Court, referring to the title and provisions of the act,
said: "The title of this act is: 'An act to add two new sec-
tions to article 2 of the Code of Public Local Laws, title
"Anne Arundel County," sub-title "Roads," so as to require
*all owners of vehicles using public streets and roads in Anne
Arundel County* to have a license therefor.' Section 1 adds
two new sections to article 2 of the Code of Public Local
Laws, * * * to follow immediately after section 203 X to be
known as sections 203 Y and 203 Z. Section 203 Y declares
that it shall not be lawful to run, or suffer to be run upon any
of the streets and roads in Anne Arundel County a vehicle
of any description whatsoever, except *ox carts, horse carts,*

*farm wagons and milk wagons,* without first having obtained
from the Clerk of the County Commissioners of Anne Arun-
del County a license at the rate fixed. * * *   Section 203 Z,
after making certain provisions requiring the license to be
attached to the vehicle and conferring the power to transfer
the license, *exempts the owner of the vehicle so licensed
from the payment of any other tax upon the same."* After
referring to several of the cases in this State, the Court, in
holding the title to be bad, said: "The mere statement of
the substantial provisions of the act demonstrates its in-
validity under the rules stated. Under a title to require *all
owners* of vehicles using the streets and roads of Anne Arun-
del County, there is contained in one section an exemption
of a large class of vehicles, and in the other an exemption
from all other taxation upon the vehicles licensed. There is
not the faintest suggestion in the title of the act to lead any
one to suspect that such exemptions were, or might be, intro-
duced in the law. In these respects the title is not only too
narrow, but it is clearly misleading. Besides this, one of
the provisions of the act—that which exempts certain prop-
erty from taxation—is wholly foreign to the subject matter
described in the title." It is clear from the language quoted
that the controlling features of the case were that while the
title of the act declared that it was an act to require *all owners*
of vehicles, &c., to have a license, the body of the act not only
exempted a large class of vehicles from that requirement,
but also contained a provision, wholly foreign to the subject-
matter described in the title, exempting the vehicles licensed
"from the payment of any other tax." No such features are
found in the body or title of the ordinance involved in this
case. The title of the ordinance is, "An ordinance to prohibit
the sale at public auction of any gold, silver, plated ware,
precious stones, watches, clocks or jewelry," and the body of
the ordinance *does prohibit* the sale at public auction of
property of the kind mentioned in the title, by declaring that
such sales shall be unlawful, and prescribing a fine for the

violation of its provisions. The only "subject" of the ordinance is therefore fully described in its title, and the mere fact that, in order to accomplish its real purpose, as disclosed in its title, certain auction sales of property of the kind mentioned are exempted in the body of the ordinance, does not render the title misleading. In the many cases in this State bearing upon this question, this Court has repeatedly said that the title of an act is sufficient "if it fairly *indicates* the subject-matter of the enactment," and that while it must indicate the purpose of the act, it "need not give an abstract of the contents of the act; nor need it mention the means and methods by which the general purpose is to be accomplished." *Fout* v. *Frederick County,* 105 Md. 545; *Crouse* v. *State,* 130 Md. 364. In the case of *Cearfoss* v. *State,* 42 Md. 403, the Court held the title sufficient where the title of the act was, "An act prohibiting the sale of spirituous and fermented liquors," &c., on election day, and the body of the act also prohibited the giving away of liquor on that day, and a similar statute was upheld in *Mitchell* v. *State,* 115 Md. 360. In the case of *Slymer* v. *State,* 62 Md. 237, the Court sustained an act where the title was, "An act to enable the qualified voters of Harford County to determine by ballot whether intoxicating liquors or alcoholic bitters shall be sold therein," and where in the body of the act druggists were, under certain circumstances, exempted from the provisions of the act prohibiting such sales, and we find in 25 R. C. L. p. 857, sec. 102, the statement that, "it is not essential that the title of a bill should recite the provisos and exceptions appearing in its body, and the fact that they do appear without previous mention in no way affects the constitutionality of the act so long as they are germane to the subject expressed in the title. Indeed, every title admits of exceptions in the body of the act unless it is so framed as specifically and positively to forbid them." In view of the authorities referred to, and others that might be cited, we cannot hold that the ordinance is void because of a defective title.

In his second proposition the appellant does not claim that the subject-matter of the ordinance is not within the police power granted to Baltimore City, and he admits the power of the city to "regulate" the business of transient dealers in gold, jewelry, &c.; that the judicial sales, sales by executors and administrators, and sales by licensed pawnbrokers of unredeemed pledges "do not come within the mischiefs * * * intended to be remedied by the ordinance," and that the exemption of such sales "from its provisions is a reasonable class distinction," but he insists that the ordinance "makes an arbitrary and unreasonable class distinction between those engaged in the jewelry business continuously for one year and those who have not been so engaged for that length of time."

The obvious purpose of the ordinance in question is to prohibit *the business* of conducting auction sales of the articles mentioned, as distinguished from such sales by merchants, who have been continuously in business for the period of one year, of the stock on hand. In other words, while prohibiting auction sales of such articles by those who conduct them as a business, the ordinance permits merchants who have an established business of one year's standing to dispose of their stock on hand upon certain conditions.

In disposing of this branch of the case the learned court below said: "In drawing this ordinance its framers knew that common knowledge and experience shows, * * * 1. That a public auction sale is not the usual method of selling merchandise like that named in the ordinance. 2. That but two classes of persons sell such merchandise at public auction, viz.: (a) Reputable merchants, because, either retiring from business, or of a wish to reduce inventory, or of the need or wish to raise money more quickly than by sale in the ordinary course of business. (b) By merchants, not reputable, who would make sales at public auction from a desire to deceive and defraud the public, who often are itinerant merchants with but little, if any, financial responsibility, who go from place to place to make such sales and remain in each

place but a short time, leaving it in time to avoid being held civilly or criminally responsible for the fraud of such sales." Whether this is an accurate description of the classes of persons who sell merchandise at public auction it is not necessary for us to determine, but it is apparent that auction sales of the class prohibited may be attended with much greater risk to the public than the auction sales permitted upon the conditions named, and that the classification made by the ordinance is not an arbitrary one, but one that bears a reasonable relation to the object sought to be accomplished by it. In the case of *Chicago, B. & Quincy R. R. Co.* v. *McGuire,* 219 U. S. 569, the Supreme Court said: "The principle involved in these decisions is that where the legislative action is arbitrary and has no reasonable relation to a purpose which it is competent for government to effect, the legislature transcends the limits of its power in interfering with liberty of contract; but where there is a reasonable relation to an object within the governmental authority, the exercise of the legislative discretion is not subject to judicial review. The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy.* Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." In *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 576, the Supreme Court said: "This Court has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amendment in the equal protection clause to take from the States the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the Court can declare it beyond the legislative authority. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78, and

previous cases in this Court cited on page 79. That a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the legislature must be allowed a wide field of choice in determining the subject-matter of its laws, what shall come within them, and what shall be excluded." In the case of *State* v. *Broadbelt,* 89 Md. 565, CHIEF JUDGE McSHERRY, speaking for the Court, said : "There is an obvious difference between the occasional sale of milk to an isolated individual and the habitual sale of it to the inhabitants of a city, a town or a village; and this difference is manifestly sufficient to 'furnish a reasonable basis for separate laws and regulations,' " and in the case of *Central Lumber Co.* v. *South Dakota,* 226 U. S. 161, the Supreme Court used this language : "What we have said makes it unnecessary to add much to the second point, if open, that the law is made in favor of regular established dealers—but the short answer is simply to read the law. It extends on its face also to those who intend to become such dealers. If it saw fit not to grant the same degree of protection to parties making a transitory incursion into the business, we see no objection," and in the case of *Baccus* v. *Louisiana,* 232 U. S. 334, the Supreme Court held that the state had the power to prohibit the sale by itinerant vendors of any drug, nostrum, ointment or application of any kind intended for the treatment of disease or injury, while allowing the sale of such articles by other persons.

Many other authorities might be cited in support of the ordinance, but those we have referred to are sufficient to show that it is not open to the second objection urged against it, and we must therefore affirm the decree of the court below.

*Decree affirmed, with costs to the appellee.*