IRVING M. ALEXANDER, Appellant, *v.* RICHARD E. ENRIGHT, as
Police Commissioner of the City of New York, Respondent.

First Department, November 28, 1924.

**Equity — action to restrain police commissioner of New York city from
interfering with sale of goods after sunset by plaintiff as auctioneer —
Laws of 1894, chap. 534, as amended, prohibits sale by auction after
sunset — equity will not restrain enforcement of criminal law — statute
is constitutional.**

An injunction will not be granted to restrain the police commissioner of the city
of New York, acting under chapter 534 of the Laws of 1894, as amended by
chapter 179 of the Laws of 1918, from stopping the plaintiff from selling
merchandise by auction after sunset, for a court of equity will not restrain
enforcement of the criminal law.

The statute which prohibits sales in auction rooms between the hours of sunset
and sunrise is a valid exercise of the police power.

APPEAL by the plaintiff, Irving M. Alexander, from a judgment
of the Supreme Court in favor of the defendant, entered in the
office of the clerk of the county of New York pursuant to an order
entered on the 27th day of November, 1923, dismissing the com-
plaint upon the merits, and also (as stated in the notice of appeal)
from said order directing the dismissal of the complaint.

*Joseph A. Shay* [*J. M. Cohen* with him on the brief], for the
appellant.

*Abraham Brill* [*Elliot S. Benedict* of counsel], for the respondent.

MARTIN, J.:

By this action it is sought to restrain the police commissioner
of the city of New York and all police officers under his control
" from in any manner interfering with the sale " of goods by the
plaintiff as an auctioneer after sunset.

The complaint after setting forth that the plaintiff is a duly
licensed auctioneer, alleges: " *Second.* That at all the times herein-
after mentioned the plaintiff was engaged in the business of selling
goods, wares and merchandise by auction at 1661 Broadway,
in the Borough of Manhattan, City of New York, said stock con-
sisting of china, silverware, tapestries, rugs, linens, furniture,
jewelry, art goods and novelties."

It is alleged that at the time of the commencement of the action
there was in effect a municipal ordinance entitled " Auction Sales
At Night," being chapter 534 of the Laws of 1894, which provided
that all except certain classes of goods must be sold between sunrise
and sunset when sold by public auction. Though called an ordi-

nance, the law appears on its face to be a statute and in 1894 was incorporated into section 1991 of the Consolidation Act. (See Laws of 1882, chap. 410, § 1991, as amd. by Laws of 1894, chap. 534.) It has been amended as late as 1918 by chapter 179 of the Laws of 1918.

The complaint further alleges that officers of the police department of the city of New York interfered with plaintiff's business by means of directions to close at sundown and threats of arrest unless sales after sundown ceased; and that such threats were accompanied by the placing of police officers in front of plaintiff's place of business with watch in hand to see that their directions were carried out. It is also alleged that the plaintiff applied for a special permit to conduct his business after sunset in accordance with the practice approved by previous administrations of the city of New York, but that such application has never been acted upon by the present mayor.

The defendant moved for judgment dismissing the complaint for insufficiency, such motion for judgment coming on at Special Term simultaneously with plaintiff's motion for an injunction *pendente lite.* The defendant's motion was granted and the complaint dismissed upon the merits.

We believe the motion to dismiss the complaint was properly granted. A court of equity is not the forum for the trial of the issues which the plaintiff seeks to have litigated. Assuming for the purpose of argument that there is a question as to the validity of the statute, the court should not in a situation such as this attempt to restrain the enforcement of the criminal law.

Mr. Justice HERRICK in *Coykendall* v. *Hood* (36 App. Div. 558) stated the law on the subject when he said: " It may be laid down as a general rule, I think, that equity will not interfere by injunction to restrain the enforcement of the criminal laws. (*Davis* v. *American Society, etc.,* 75 N. Y. 362; *Matter of Sawyer,* 124 U. S. 200.)

" There may be exceptions to this general rule, and extreme cases may arise where an injunction may be proper to prevent a grave injustice and an irreparable injury. * * *

" Here the defendant, if arrested, can, if he so desires, have a jury trial, the same as any other person accused of a misdemeanor; here there is no claim that the business of the plaintiff will be broken up, only that the business he expects from the merry-go-round, which is only a part of, and incident to, the principal business carried on by him.

" It is claimed upon the part of the respondent that the ordinance in question is void, as being in conflict with the Municipal Law, and this proceeding is apparently brought for the purpose of testing

that question.   Whether the ordinance is a valid one is a question of law and not of equity; and while courts of equity may determine questions of law, as incident to a proceeding in equity, equitable proceedings cannot be maintained for the sole or principal purpose of determining such questions."

In *Lee* v. *O'Malley* (140 App. Div. 595) it was held that " A court of equity has no jurisdiction to enjoin contemplated action by public officers under article 3-a of the General Business Law, regulating the business of private banking, requiring such bankers to obtain a license, and imposing certain penalties.   The court will not entertain such suit for the purpose of determining the constitutionality of the act."

In *Buffalo Gravel Corporation* v. *Moore* (201 App. Div. 242, 246) the court said:   " It is elementary that ' Equity will not interfere to prevent the enforcement of the criminal law.'   That rule had never been departed from in a case in this State where a person has been indicted and seeks to avoid a trial on the indictment by bringing an action in a court of equity to restrain the enforcement of the statute under which he was indicted on the ground that it is void."

In *Star Company* v. *Brush* (185 App. Div. 261) the court said: " The intervention of the court is asked, not to save complainant from a penalty, or to declare its innocence, but to stop this continued injury by excluding its papers from local sale.   Such an injunction is not an interference with the criminal law."

In *Delaney* v. *Flood* (183 N. Y. 323) Judge WERNER, writing the opinion, said: " If equity will not intervene in behalf of a concededly lawful business of a fixed and unchanging character, to prevent the criminal prosecution of some alleged unlawful act in its conduct, how can such intervention be justified in a case where the business itself, even when lawfully conducted, exists by mere sufferance of law, or where it is of such a character that it may be lawful or unlawful at the will of him who conducts it?   Such a situation as is presented in the case at bar is one which, in its very nature, cannot be adequately dealt with by a court of equity. What might be a trespass at one instant of time may be a perfectly justifiable and necessary act at another.   Here lies the fundamental distinction between the case at bar, and that class of cases in which equity assumes jurisdiction to restrain trespasses that are continuous or permanent in their nature, and where such relief is necessary to obviate multiplicity of actions at law and to prevent continuity of wrong."

In *Davis* v. *American Society for the Prevention of Cruelty to Animals* (75 N. Y. 362) the Court of Appeals held that a court

of equity is not the place for the trial of an issue growing out of criminal law. The court there said: " Whether a person accused of a crime be guilty or innocent, is to be determined in a common law court by a jury; and the people, as well as the accused, have the right to have it thus determined. If this action could be maintained in this case, then it could in every case of a person accused of a crime, where the same serious consequences would follow an arrest; and the trial of offenders, in the constitutional mode prescribed by law, could forever be prohibited. A person threatened with arrest for keeping a bawdy house, or for violating the excise laws, or even for the crime of murder, upon the allegation of his innocence of the crime charged and of the irreparable mischief which would follow his arrest, could always draw the question of his guilt or innocence from trial in the proper forum."

Those who violate the provisions of a statute which places limitations on sales in auction rooms, must accept the consequences of their act and take the risk of arrest and conviction. A court of equity is not the place to determine the question of their innocence or guilt.

We are also of the opinion that the statute is not, as contended by plaintiff, unconstitutional. In this and many other States the business of an auctioneer has been the subject of careful supervision and necessary restriction. The history and the reasons for such supervision and restriction are well stated in the leading case upon the subject (*People ex rel. Schwab* v. *Grant*, 126 N. Y. 473), where it was said: " The appointments of auctioneers and the regulation of their rights, duties and compensation, have always been the subject of legislation in this State. It has, from the first, been assumed, in dealing with the subject by the public authorities, that no person had a natural right to prosecute such a business at his pleasure, and privileges to do so have always been granted by some authority, subject to conditions and regulations, which excluded the great body of the people from the prosecution of such business. The right to regulate, control and limit the number of persons employed in such business has been exercised by the Legislature as one of its acknowledged police powers, from colonial times to the present and, I believe, has never been questioned. The persons who have been permitted to pursue the avocation of auctioneers in the State have always enjoyed special privileges, and have been subject to special conditions and restrictions which, for the purpose of this inquiry, it is unnecessary to enumerate in detail."

The State may prohibit the conduct of a business at such hours as are injurious to the public comfort, morals or safety, and it

possesses a large degree of discretion in the regulation and prohibition of certain kinds of business.

The statute here attacked has recently been upheld by the Appellate Division, Second Department, as a valid enactment in the case of *Biddles, Inc.,* v. *Enright* (208 App. Div. 790) where the court said: " Considering the history of the legislation upon the question involved, the reasons advanced as justifying the law preventing theft and protecting the public from fraud, and in view of other similar legislation now upon the statute books and the decisions of our courts upon this and kindred subjects, we are of opinion that the acts in question tend to protect the safety and welfare of the community, and are within the rule laid down by the Court of Appeals in *Ives* v. *South Buffalo R. Co.* (201 N. Y. 301)."

In *City of Buffalo* v. *Marion* (13 Misc. 639) it was held that an ordinance prohibiting the sale of watches at auction after six o'clock in the evening was authorized by a provision of the city charter giving the common council power to pass ordinances licensing and regulating auctioneers. The court (at p. 640) said: " The licensing of auctioneers and the regulation of their conduct as such has always been held within this State to be within the power of the Legislature, and that statutes and ordinances for that purpose are valid." (Citing *People ex rel. Schwab* v. *Grant,* 126 N. Y. 473.)

In *People ex rel. Schwab* v. *Grant* (*supra*) Chief Judge RÜGER in passing upon an act regulating auction sales said: " In the government of the affairs of a great municipality many powers must necessarily be confided to the discretion of its administrative officers, and it can be productive only of mischief in the treatment of such questions to substitute the discretion of strangers to the power in place of that of the officers best acquainted with the necessities of the case and to whom the Legislature has specially confided their exercise."

In *Wright* v. *Hart* (182 N. Y. 330) Judge VANN in his dissenting opinion, which was afterwards approved by the United States Supreme Court (*Lemieux* v. *Young,* 211 U. S. 493 *et seq.*), said: " Liberty under the Constitution does not mean natural liberty, or the right to act as one pleases subject only to the laws of nature, for society cannot exist on that basis. Constitutional liberty is the right to act without restraint upon person or property, except such as is necessary or expedient for the general advantage of the public. * * *

" The legislation under consideration was intended to suppress a deep-seated evil, common in sales of a certain kind. The existence of the evil is admitted, and the right of the Legislature to provide a remedy is also admitted, but it is insisted that the remedy pro-

vided is so unreasonable that it violates the primary guaranties of the Constitution."

In *Hyman* v. *Boldrick* (153 Ky. 77; 154 S. W. 369) the court said: " Thieves resort to second-hand stores especially at night to dispose of stolen goods, and as they do this under cover of darkness, it is almost impossible to apprehend them. Housebreakers and other thieves follow their calling usually under cover of darkness and when they get booty, try to dispose of it as soon as possible. If the second-hand stores are not allowed to remain open at night, they will be more easily detected, as they can safely carry things in the darkness which the police could detect in the daylight, and when property has been once sold to a second-hand dealer, it is often difficult to find the thief.

" The detective force of the city of Louisville is kept on duty mostly during the day. The ordinance in question was deemed necessary by the police department, there being much petty thieving in the city, and it being very difficult to catch the thieves in a city of 250,000 people."

In *People ex rel. Armstrong* v. *Warden* (183 N. Y. 223) the court held that " A statute to promote the public health, the public safety or to secure public order or for the prevention or suppression of fraud is a valid law, although it may, in some respects, interfere with individual freedom. All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good."

In *People* v. *Beakes Dairy Co.* (222 N. Y. 416) the court said that " any trade, calling or occupation may be reasonably regulated if ' the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the Legislature can properly protect them.' " (Citing *Allen* v. *Riley*, 203 U. S. 347; *Brazee* v. *Michigan*, 241 id. 340, 343.)

For many years the sale of goods at auction has been the subject of careful police supervision because of the numerous so-called " fake auction sales," the result of misrepresentation and fraud. Such fraudulent sales cannot be conducted if those charged with the administration of the criminal law are active and vigilant. The courts have always sought to aid in the enforcement of the law where there is a sincere effort to suppress crime and have refused in such cases to restrain by injunction those honestly endeavoring to improve conditions.

The judgment should, therefore, be affirmed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment affirmed, with costs.