[Crim. No. 1300. First Appellate District, Division One.—December 15, 1925.]

In the Matter of the Application of SAM WEST for a Writ of Habeas Corpus.

[1] CONSTITUTIONAL LAW — GENERAL LAWS — EQUAL PROTECTION OF LAWS—CLASS LEGISLATION—UNIFORM OPERATION.—With respect to those constitutional provisions relating to equal protection of laws, class legislation and uniformity of operation, general laws are those which operate alike upon all persons to whom they apply, and apply equally to all persons in the same category within the jurisdiction of the lawmaking power; and to be general in its scope, an act need not include all classes of individuals, but the requirements of the constitution are met if the act relates to and operates uniformly upon the whole of any single class validly selected, and every subject which might have been included need not be covered, it being sufficient if the subjects covered possess such intrinsic peculiarities as to justify the legislative determination that those subjects require special enactment.

[2] ID.—GENERAL LAWS—CLASSIFICATION.—In order to be uniform in its operation, a law need not operate universally, but it is general if it applies to all of a certain class alike, and operates uniformly upon all persons standing in the same category and upon rights and things in the same relation, provided that the necessity for the classification appears and is founded upon reason and is not the product of the exercise of an arbitrary will.

[3] ID.—LEGISLATIVE CLASSIFICATION — DISCRETION — PRESUMPTIONS.— The discretion of the legislative body to make classifications in general laws is very wide, and when such classification is attacked in the courts it will be supported by every presumption in its favor and will not be set aside merely because in the court's judgment it may be unwise or unnecessary to apply certain rules to certain classes.

[4] MUNICIPAL CORPORATIONS—ORDINANCES—REGULATION OF JEWELRY AUCTIONS — POLICE POWER — CONSTITUTIONAL LAW.—A municipal ordinance regulating the selling of jewelry at public auction, except upon certain conditions and under certain restrictions imposed by the ordinance, enacted in the interest of the public safety and welfare, and not as an arbitrary or capricious at-

1. See 5 Cal. Jur. 790, 795; 6 R. C. L. 374.
2. See 5 Cal. Jur. 819; 6 R. C. L. 375.
3. See 5 Cal. Jur. 832; 6 R. C. L. 384.
4. Regulations affecting auctions and auctioneers, notes, 31 A. L. R. 299; 39 A. L. R. 773.

tempt to interfere with the freedom of trade or as an invasion of the rights of an individual to conduct a lawful business, is a valid exercise of the police power of the municipality, and is not violative of the inalienable rights clause of the constitution of California (article I, section 1), or of those clauses thereof declaring that all laws of a general nature shall have a uniform operation (article I, section 11), or that the legislature shall not pass local or special laws where a general law can be made applicable (article IV, subdivision 33 of section 25), or of that portion of the fourteenth amendment to the constitution of the United States which provides that no state shall deny to any citizen within its jurisdiction the equal protection of the law.

[5] ID.—ORDINANCES — REASONABLENESS OF — DISCRETION OF LEGISLATIVE BODY—REVIEW BY COURTS.—The question of the reasonableness of an ordinance is to a certain extent a judicial one, but the scope of the judicial inquiry may not transcend those considerations which are allowed to influence the legislative body in dealing with the matter of the policy of the law which it enacts; and whether the enactment is a wise one, or is based upon sound economic theory, or is the best means to achieve the desired result, are matters for the judgment of the legislative body, and even though there be a conflict of opinion in relation thereto it is not sufficient to bring those considerations within the purview of judicial cognizance.

[6] ID.—LEGISLATIVE POWER — ARBITRARY ACTION — DISCRETION — REVIEW.—Where the legislative action is arbitrary and has no relation to a purpose which it is competent for government to effect, the limit of legislative power is violated, but where there is reasonable relation to an object within the governmental authority, the exercise of legislative discretion is not subject to judicial review.

[7] ID.—ORDINANCE REGULATING AUCTION SALE OF JEWELRY—REASONABLE RESTRICTION.—A provision in an ordinance regulating the sale of jewelry at public auction, which prohibits such auction from being conducted between the hours of 6 P. M. and 8 A. M., is not unreasonable, in view of the opportunities for fraud and deception at auction sales of jewelry at night after usual business hours and under artificial lights.

[8] ID.—VALIDITY OF ORDINANCE—CONSTITUTIONAL LAW.—The requirement of an ordinance that the applicant for a permit to sell jewelry at auction must furnish certain information as to his stock and other matters, is not sufficiently burdensome to render the ordinance in that respect unconstitutional, where the applicant does not claim that such requirement cannot be complied with.

5.  See 18 Cal. Jur. 835.
6.  See 18 Cal. Jur. 836.

[9] ID.—REGULATION OF BUSINESS—PERMITS—DELEGATION OF POWERS. As to those kinds of occupations or businesses which are the proper subjects of police surveillance and regulation, the delegation of power to municipal boards or officials to grant or refuse permits will be sustained.

[10] ID.—EXERCISE OF POWERS—DISCRETION — PRESUMPTIONS.—It is not to be assumed that the council or officer, in exercising the power to grant or refuse permits, will act arbitrarily, or otherwise than in the exercise of a sound discretion.

[11] ID. — VIOLATION OF ORDINANCE — IMMATERIAL CONSIDERATIONS— HABEAS CORPUS.—In a proceeding in *habeas corpus* to secure release from custody after arrest for violating a municipal ordinance regulating auction sales of jewelry, where the petitioner conducted the auction contrary to the ordinance, but had employed a licensed auctioneer as therein provided, that part of the ordinance relating to the application for and issuance of permits to auctioneers will not be considered, the petitioner not being affected thereby.

(1) 36 Cyc., p. 985, n. 69, p. 986, n. 70, p. 992, n. 90. (2) 12 C. J., p. 1129, n. 18; 36 Cyc., p. 992, n. 91, p. 993, n. 92. (3) 12 C. J., p. 791, n. 19, p. 887, n. 38, p. 891, n. 77, p. 1147, n. 13; 28 Cyc., p. 365, n. 3. (4) 12 C. J., p. 958, n. 87, p. 1163, n. 35 New; 28 Cyc., p. 364, n. 85; 36 Cyc., p. 990, n. 84. (5) 12 C. J., p. 1147, n. 15. (6) 12 C. J., p. 1145, n. 5, p. 1149, n. 20. (7) 6 C. J., p. 823, n. 19. (8) 37 C. J., p. 242, n. 91. (9) 37 C. J., p. 177, n. 33. (10) 37 C. J., p. 130, n. 30, p. 240, n. 78, p. 241, n. 79. (11) 12 C. J., p. 782, n. 1.

PROCEEDING on Habeas Corpus to secure release from custody on a charge of violating the provisions of a municipal ordinance regulating auction sales of jewelry. Writ denied.

The facts are stated in the opinion of the court.

David J. Aaron, R. C. Young and Maxwell McNutt for Petitioner.

Leon E. Gray, City Attorney, Markell C. Baer, Assistant City Attorney, Earl Warren, District Attorney, and J. Paul St. Sure, Deputy District Attorney, for Respondent.

9. See 18 Cal. Jur. 840.
10. See 18 Cal. Jur. 841.

KNIGHT, J.—The petitioner, Sam West, was arrested by the chief of police of the city of Oakland under a warrant issued in a criminal action wherein petitioner was charged with having violated the provisions of an ordinance of said city relating to the holding of auction sales of jewelry, and he now seeks to be discharged from custody on *habeas corpus* upon the ground that said ordinance is unconstitutional.

The ordinance in question purports to regulate the retail selling of jewelry at public auction. It provides that "it shall be unlawful for any person, firm, corporation or association to sell, dispose of, or offer for sale, in the City of Oakland, at public auction, or to cause or permit to be sold, disposed of, or offered for sale in the City of Oakland, at public auction, any platinum, gold, silver, or plated ware, precious stones or semi-precious stones, watches or other jewelry, whether the same shall be their own property or whether they shall sell the same as agents or employees of others," but it expressly exempts from its operation judicial sales, those made by executors or administrators, or licensed pawnbrokers, and also sales made "at public auction of the stock on hand of any person, or persons, or corporation, that shall for the period of one year next preceding such sale, have been continuously in business in the City of Oakland as a retail or wholesale merchant of . . . jewelry," provided that in the latter case, before such merchant may hold an auction he must obtain a permit therefor which shall be applied for and issued in the following manner: Said merchant shall, not less than fifteen nor more than thirty days previous to conducting such sale, make a written application therefor, under oath, to the city council specifying "the name and address of the applicant, the location and purpose of the sale and its expected duration, and itemizing in detail the quality, quantity, kind or grade of each item of goods, wares and other articles to be sold, the wholesale market value thereof, the name of the auctioneer who shall conduct the sale," which application shall then be investigated by the chief of police and a report made thereon by him to the city council as to the character of the applicant and of his auctioneer, "the *bona fide* nature of the proposed sale"

and whether the place where it is proposed to carry on said sale is a proper place. The council must be furnished also with satisfactory evidence that the jewelry proposed to be sold is "a *bona fide* part of the merchant's stock in trade and not secured, purchased, or brought into said place of business for or in anticipation of said sale." The ordinance then provides that "the Council in considering the application and the attending facts shall exercise a reasonable and sound discretion in granting or denying the permit applied for." The ordinance further requires that such sale at public auction "shall be held on successive days, Sundays and legal holidays excepted, and shall not continue for more than thirty days in all from the commencement of the sale, and shall be permitted only where such merchant is *bona fide* disposing of his stock for the purpose of retiring from business," and that said auction shall be conducted during the daytime between the hours of 8 and 6 o'clock. Other provisions of the ordinance prohibit the making of false representation as to the previous history, ownership, or quality of the goods to be disposed of, also the activity of "cappers," "boosters," or "shillers," or the offering of any false bids.

It appears that petitioner was eligible, so far as residential qualification was concerned, to obtain a permit to hold an auction sale, having been engaged in the jewelry business in the city of Oakland for twelve years immediately preceding his arrest, but that he refused to comply with the ordinance in the matter of applying for such permit upon the ground that said ordinance was void, contending in this respect that said ordinance constituted an unjust discrimination against merchants engaged in the jewelry business, and that the regulatory measures thereof were so oppressive and burdensome as to make it impracticable for him to comply with them without sustaining great financial loss. In this regard petitioner alleges that during the twelve years he has been in said jewelry business he has accumulated a large and valuable stock in trade, which he now desires to dispose of and retire from business; that since said stock consists of articles of luxury and of personal adornment it cannot be quickly and profitably sold in the ordinary course of retail business or at wholesale or in bulk, but can be disposed of

readily and to the best advantage only under special conditions afforded by public retail auction sale, and that the time required for such sale would necessarily extend over a period of four months; furthermore, he alleges, that those provisions of said ordinance requiring jewelers, before they may sell at retail auction, to file a schedule of the stock proposed to be sold, specifying quality, quantity and grade thereof, and to furnish satisfactory evidence to the effect that only the stock on hand will be disposed of, and which prohibit the holding of the auction during the night-time, amount to an imposition of disabilities and burdensome conditions not justified by any features of the jewelry business, or by any consideration of the public safety, health, or welfare, and that inasmuch as similar disabilities and conditions are not imposed upon merchants engaged in other lines of business, an unreasonable discrimination is exercised against those engaged in the jewelry business. In view of those alleged facts petitioner contends that said ordinance and the provisions thereof above noted are violative of the inalienable rights clause of the state constitution (sec. 1, art. I), also of those clauses thereof declaring that "all laws of a general nature shall have a uniform operation" (sec. 11, art. I), and that the legislature shall not pass local or special laws where a general law can be made applicable (subd. 33, sec. 25, art. IV); also of that portion of the fourteenth amendment to the constitution of the United States, which provides that no state shall deny to any citizen within its jurisdiction the equal protection of the law.

Petitioner does not question the authority of the city, in the exercise of its police power, to reasonably regulate the conduct of auction sales generally, but contends, first, that no valid reason exists why jewelry merchants should be subjected to certain burdens and restrictions in disposing of their property at auction while merchants engaged in the sale of other kinds of merchandise are exempted from such burdens and restrictions; and, secondly, that if such classification may be legally made, the regulatory features of said ordinance are unnecessary for the public welfare, unreasonable and void.

[1] With respect to those constitutional provisions relating to equal protection of laws, class legislation, and

uniformity of operation, upon which petitioner relies, it has been held generally in this state, as will be seen from the treatise on constitutional law contained in California Jurisprudence (vol. 5, p. 790 et seq.), that general laws are those which operate alike upon all persons to whom they apply and apply equally to all persons in the same category within the jurisdiction of the law-making power (*McDonald* v. *Conniff*, 99 Cal. 386 [34 Pac. 71]; *Cody* v. *Murphey*, 89 Cal. 522 [26 Pac. 1081]); that to be general in its scope, an act need not include all classes of individuals, but the requirements of the constitution are met if the act relates to and operates uniformly upon the whole of any single class validly selected (*City of Los Angeles* v. *Lankershim*, 160 Cal. 800 [118 Pac. 215]); that every subject which might have been included need not be covered, but it is sufficient if the subjects covered possess such intrinsic peculiarities as to justify the legislative determination that those subjects require special enactment. (5 Cal. Jur. 795; *Matter of Application of Miller*, 162 Cal. 687 [124 Pac. 427]; *In re Martin*, 157 Cal. 51 [26 L. R. A. (N. S.) 242, 106 Pac. 235].) [2] It is furthermore held that in order to be uniform in its operation, a law need not operate universally. It is general if it applies to all of a certain class alike, and operates uniformly upon all persons standing in the same category and upon rights and things in the same relation. The classification must be a proper one, however (*Barbier* v. *Connolly*, 113 U. S. 27 [28 L. Ed. 923, 5 Sup. Ct. Rep. 357, see, also, Rose's U. S. Notes]; *French* v. *Davidson*, 143 Cal. 658 [77 Pac. 663]), that is, the necessity for the classification must appear, and it must be founded upon reason and must not be the product of the exercise of an arbitrary will (*Pasadena* v. *Stimson*, 91 Cal. 238 [27 Pac. 604]; *Darcy* v. *San Jose*, 104 Cal. 642 [38 Pac. 500]). [3] The discretion of the legislative body to make these classifications is very wide, and when such classification is attacked in the courts it will be supported by every presumption in its favor (*In re Cardinal*, 170 Cal. 519 [L. R. A. 1915F, 850, 150 Pac. 348]), and will not be set aside merely because in the court's judgment it may be unwise or unnecessary to apply certain rules to certain classes (*Title & Document Restoration Co.* v. *Kerrigan*, 150 Cal.

289 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356]). Agreeable to these conclusions, it has been held in this state that particular businesses may be classified and regulated (*In re San Chung*, 11 Cal. App. 511 [105 Pac. 609]; *People* v. *Bank of San Luis Obispo*, 154 Cal. 194 [97 Pac. 306]; *State Sav. & Com. Bank* v. *Anderson*, 165 Cal. 437 [L. R. A. 1915E, 675, 132 Pac. 755]; *Wood* v. *Krepps*, 168 Cal. 382 [L. R. A. 1915B, 851, 143 Pac. 691]; *Ex parte Sohncke*, 148 Cal. 262 [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A. (N. S.) 813]).

Although the question of the constitutionality of an ordinance of this particular kind, that is, one by which the municipality seeks to regulate the holding of retail auctions of jewelry, does not seem to have been previously passed upon by the courts of the appellate jurisdiction in this state, similar ordinances have been assailed before the courts of other states, upon grounds identical with those now urged by petitioner against the validity of this ordinance; and those ordinances have been held to be constitutional, the effect of the decisions being that the classification of business thus made is not arbitrary or discriminatory, but based upon substantial reason, in view of the object sought to be accomplished by said ordinances (*Holsman* v. *Thomas*, 112 Ohio, 397 [39 A. L. R. 760, 147 N. E. 750]; *City of Roanoke* v. *Fisher*, 137 Va. 75 [119 S. E. 259]; *Mogul* v. *Gaither*, 142 Md. 380 [121 Atl. 32]; *Carlton* v. *City of Watertown*, 124 Misc. Rep. 244 [207 N. Y. Supp. 339]; *State* v. *Bates*, 101 Minn. 301 [112 N. W. 67]).

[4] We agree in the main with the reasoning of those cases and believe that the conclusions stated therein should be held as controlling here. It is pointed out in those cases that the evils which may flow from the holding of such auctions and the opportunity afforded through them to impose upon and defraud the public are well known; that in many cases such auctions are likely to be attended with abuses and frequently result in cheating and defrauding the unsophisticated. It is asserted, and we think, truthfully, that jewelry auctions are often mere schemes for trapping and defrauding the unwary; that the people, in general, are unskilled in the art of determining the purity of gold and silver or the genuineness of diamonds, particularly at a glance under artificial light, and that the sale

of those articles under such circumstances in competition at public auction necessarily exposes many persons to misfortunes against which this character of legislation might probably protect them. It is further said that the character of an ordinance such as the one now under consideration tends in some degree to prevent those evils and misdeeds and therefore is enacted in the interests of public safety and welfare, and not, as has been claimed, as an arbitrary or capricious attempt to interfere with the freedom of trade or as an invasion of the rights of an individual to conduct a lawful business. Furthermore, it is quite clearly demonstrated by those decisions that similar opportunities for practicing fraud and deception of the public do not ordinarily attend the holding of auctions for the sale of other articles of merchandise; and that consequently there are reasons for the application and enforcement of rigid regulations against jewelry auctions that do not exist in the cases of auctions in other lines of business.

Referring more particularly to the decision in *Holsman* v. *Thomas, supra,* the ordinance considered there is similar in a number of details to the one involved in the instant case. It required a license to be obtained before an auction of jewelry could be conducted, and only those merchants residing in the city for one year and owning a regular stock of jewelry therein for a period of six months during that year were qualified to obtain said license. It also limited the period of time the auction might continue. In holding said ordinance to be constitutional the court declared that the mere fact that said ordinance did not include within its scope dealers selling other kinds of commodities did not render it an arbitrary and unreasonable discrimination against those engaged in the jewelry business, nor was its constitutionality impaired because it did not extend over the entire field of possible abuses of like kind. The ordinance, as was shown, did apply with equal force to every seller of jewelry who desired to sell at auction in the city, and consequently there was no discrimination against anyone of that class. It was further held that the ordinance was not confiscatory in its effect and did not deprive the owner of the jewelry of his right to the enjoyment of his property, because he might at any time, without restriction, dispose of his stock through the ordinary course of business, but

if he desired to dispose of his stock at public auction, which was a matter over which the municipality had control, he would be compelled to do so under certain prescribed conditions and within a limited period during each year, and if, in so doing, he was obliged to suffer some incidental inconvenience and possibly some financial loss on account of the enforcement of certain regulations provided for in the ordinance, the validity of the ordinance was not affected thereby for the reason that the imposition of those regulations was well within the exercise of the police power of the municipality. Upon this last point may be cited the case of *Jeffrey Mfg. Co. v. Blagg*, 235 U. S. 571 [59 L. Ed. 364, 35 Sup. Ct. Rep. 167, see, also, Rose's U. S. Notes], wherein it was said: "This court has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amendment in the equal protection clause to take from the states the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority. (*Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78, and the previous cases in this court cited on page 79 [Ann. Cas. 1915C, 160, 55 L. Ed. 369, 31 Sup. Ct. Rep. 337, see, also, Rose's U. S. Notes].) That a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the legislature must be allowed a wide field of choice in determining the subject matter of its laws, what shall come within them and what shall be excluded." Later on, in another case, in sustaining the constitutionality of certain state legislation regarding the sale of corporate securities, the same court said: "We think the statute under review is within the power of the state. It burdens honest business, it is true, but burdens it only that under its forms dishonest business may not be done. This manifestly cannot be accomplished by mere declaration; there may be conditions imposed and prohibitions made for their performance. Expense may thereby be caused and inconvenience, but to arrest the power of the state by such causes would make it impotent to discharge its function. It costs something to be governed." (*Merrick* v. *Halsey & Co.*, 242 U. S. 568, 587 [61 L. Ed. 498, 37 Sup. Ct. Rep. 227, see, also, Rose's U. S. Notes Supp.].) In *Mogul* v. *Gaither*,

*supra,* the right of the city, in the exercise of its police power, to adopt said ordinance regulating the holding of jewelry auctions, was conceded, but the constitutionality of said ordinance was challenged upon the ground that said ordinance, like the one in the instant case, made a distinction in its operation between those engaged in business for one year and those who had not been engaged for that length of time, and, furthermore, like the one before us, said ordinance contained a provision limiting the sale to thirty days. The ordinance was sustained, the court holding it to be apparent that auction sales of the class prohibited might be attended with much greater risk to the public than auction sales permitted upon the conditions named, and that therefore the classification created by the ordinance was not arbitrary, but one that bore a reasonable relation to the object sought to be accomplished by it. In *State* v. *Bates, supra,* a municipal ordinance was declared constitutional which forbade a licensed auctioneer from holding auction sales of jewelry under any circumstances. After discussing the evils which sometimes flow from such auctions the court said: ''The claim that the ordinance is invalid because it is 'discriminatory as against a certain business within a certain class' cannot be sustained. True it is that the ordinance, as a means of policing and regulating the general business of an auctioneer prohibits the conducting of an auction of jewelry and watches; but such special sales are liable to be attended with great abuses, and to result in cheating and defrauding the unsophisticated which is not the case of the general business of the auctioneer. The ordinance applies equally to all auction sales within the city, and it is not discriminatory; and we hold it valid.'' In the case of *People* v. *Gibbs,* 186 Mich. 127 [Ann. Cas. 1917B, 830, 152 N. W. 1053], cited herein by petitioner on another point, the court held in reference to an ordinance regulating jewelry auctions that there could be no serious question raised as to the general power of the city under its charter to enact an ordinance to license and regulate auctioneers and auctions held within its limits, and therein prescribe such regulations as are necessary and appropriate in that connection to eliminate fraud, and to protect the public from annoyance and imposition.

[5] It may be conceded, as petitioner contends, that the question of the reasonableness of an ordinance is, to a certain extent, a judicial one (*In re Smith*, 143 Cal. 368 [77 Pac. 180]), but as stated in *Chicago, B. & Q. R. Co.* v. *McGuire*, 219 U. S. 549 [55 L. Ed. 328, 31 Sup. Ct. Rep. 259], the scope of the judicial inquiry may not transcend those considerations which are allowed to influence the legislative body in dealing with the matter of the policy of the law which enacts it. And therefore whether the enactment is a wise one, or based upon sound economic theory, or is the best means to achieve the desired result, are matters for the judgment of the legislative body, and even though there be a conflict of opinion in relation thereto it is not sufficient to bring those considerations within the purview of judicial cognizance. [6] Where the legislative action is arbitrary and has no relation to a purpose which it is competent for government to effect, the limit of legislative power is violated, but where there is reasonable relation to an object within the governmental authority, the exercise of legislative discretion is not subject to judicial review. The language employed in the decision in *In re Girard*, 186 Cal. 718 [200 Pac. 593], is in apparent harmony with the rule just stated. There the question arose as to the constitutionality of the Corporate Securities Act (Stats. 1917, p. 673) of this state, wherein trustees created by will or by order of court in a judicial proceeding were allowed to sell without a permit securities issued by such trustees, but which act forbade a sale without such permit in case of trustees created under an instrument executed by individuals. The court said: "We cannot declare a law unconstitutional in the matter of discrimination unless there is no rational doubt that it improperly discriminates between persons similarly situated. We must presume that the legislature made inquiry to determine whether or not there were evils which required regulation, and that upon such inquiry it was ascertained that the mischief sought to be corrected was being done under the form of trusts created by private individuals and not under the form of testamentary trusts or trusts declared in judicial proceedings." And in the case of *Carlton* v. *City of Watertown, supra,* which dealt with an ordinance regulating jewelry auctions, it was said that the court was a judicial and not a legislative body, and that the duty of

determining whether the measure in question was wise and for the best interest of the people was vested in the common council and not in the court. Continuing, the court said: "It may be a debatable question whether the medicine is not too bitter and powerful a dose for the disease. Reasonable men might take opposite sides in such a debate. If so, the court cannot substitute its judgment for that of the law-making body. The court can step in only when it is clearly apparent that the law involved is unreasonable and capricious, and when that question is not fairly debatable."

In view of the foregoing authorities we conclude that the municipality, in making the classification complained of and in applying the provisions of said ordinance to jewelry auctions only, acted entirely within the lawful exercise of its constitutional power.

[7] We find no merit in the objection made against the provision of said ordinance prohibiting auctions from being conducted "between the hours of 6 p. m. and 8 a. m." In the case of *City of Roanoke* v. *Fisher, supra,* this precise question was raised and decided. Evidence was referred to showing "that the public have . . . been frequently deceived and defrauded by the auction sales of such articles as are mentioned in such ordinance (jewelry and diamonds) after usual business hours and under artificial lights, and that this is likely to occur if such sales are allowed, for the reasons that it is more important and necessary for the protection of the purchaser that he be afforded a reasonable opportunity of inspection of such articles, under ordinary conditions and lighting, than of other forms of merchandise; that unless such opportunity is afforded, the purchaser is easily defrauded and misled in his purchase." Other cases holding to the same effect are *Alexander* v. *Enright,* 211 App. Div. 146 [206 N. Y. Supp. 785]; *Carlton* v. *City of Watertown, supra; Biddles, Inc.,* v. *Enright,* 208 App. Div. 790 [203 N. Y. Supp. 920], disapproving *Robinson* v. *Wood,* 119 Misc. Rep. 299 [196 N. Y. Supp. 209], holding to the contrary. Counsel for petitioner cites two cases holding such a provision to be unreasonable. In the first case, however, *People* v. *Gibbs,* 186 Mich. 127 [Ann. Cas. 1917B, 830, 152 N. W. 1053], it will be found that the ordinance contained many other rigid restrictions which are not embraced in the ordinance before us, and which amply protected the purchaser.

against fraud, among them being that the party holding the auction was not allowed to close his place of business within five days following such sale, and during that time the purchaser of any article might return the article purchased by him if the same had been misrepresented, demand the return of the purchase price and collect it from the person conducting the auction or from his bondsmen. Upon a refusal to comply with the purchaser's demand the seller was liable for a forfeiture of license and payment of fine. In view of these and other drastic safeguards inserted in the ordinance for the protection of the buyer the court said that there was no evidence indicating "what special wrong to the public would result from auction during business hours after 6 p. m., *when conducted according to the requirements of said ordinance,* justifying their prohibition as a necessary police regulation." (Italics ours.)

Since the Oakland ordinance does not contain any of the exacting requirements noted, we think that the necessity for the clause in the Oakland ordinance in regard to the hours of conducting the sale cannot be considered unnecessary or unreasonable. The other case cited, *Hayes* v. *City of Appleton*, 24 Wis. 542, dealt with an ordinance declaring it to be unlawful for an auctioneer to sell any goods "after sundown," and it was said by the court that it was not shown what evil was to be prevented or good promoted by the passage of the ordinance in question; "nor can we judicially see" says the court, "that any restriction of the kind was necessary." It does not appear that this was a jewelry auction case; but in any event we think it only necessary to call attention to the fact that this case was decided during the year 1869, before the invention of the electric light, and therefore the reasons assigned in the Virginia case for prohibiting auction sales of diamonds and jewelry with the aid of artificial light did not exist when the Wisconsin case was decided.

[8] The requirement of the Oakland ordinance that the applicant for a permit furnish certain information as to his stock and other matters is not so burdensome, we think, as to render the ordinance in that respect unconstitutional. Petitioner does not claim that those requirements cannot be complied with, and in our opinion they are not any more burdensome than those inserted in similar ordi-

nances which have been sustained. (*Clein & Ellman* v. *City of Atlanta*, 159 Ga. 121 [124 S. E. 882]; *Carlton* v. *City of Watertown, supra; People* v. *Gibbs, supra.*)

[9] The contention that said ordinance in effect vests an illegal arbitrary power in the city council in the matter. of granting or refusing permits is fully answered by the decisions in the cases of *In re Holmes*, 187 Cal. 640 [203 Pac. 398], *Boyd* v. *City of Sierra Madre*, 41 Cal. App. 520 [183 Pac. 230] , and *Parker* v. *Colburn*, 196 Cal. 169 [236 Pac. 921], wherein it held in substance that as to those kinds of occupations or businesses which are the proper subjects of police surveillance and regulation, the delegation of power to municipal boards or officials to grant or refuse permits will be sustained. [10] Moreover, it is not to be assumed that the council or officer, in exercising the dispensing power, will act arbitrarily, or otherwise than in the exercise of a sound discretion (Dillon on Municipal Corporations, 5th ed., p. 937), and if this petitioner had applied for a permit under the requirements of the ordinance, and been either whimsically or arbitrarily refused such permit, he might then have had recourse to the courts for relief from such unjust or arbitrary action (*In re Holmes, supra; Gaylord* v. *City of Pasadena*, 175 Cal. 433 [166 Pac. 348]).

[11] A discussion of the second feature of the ordinance, which deals with the matter of the application for and issuance of permits to auctioneers, is not necessary for the reason that petitioner is not affected thereby (*Ex parte Murphy*, 8 Cal. App. 440 [97 Pac. 199]; Id., 155 Cal. 322 [110 Pac. 1134]), and furthermore his petition shows that when arrested his auction was "being conducted by a regularly licensed auctioneer."

The writ is denied.

Tyler, P. J., and Cashin, J., concurred.