[Civ. No. 11499. Third Dist. Dec. 19, 1967.]

JAMES A. COOPER, Plaintiff and Appellant, v. WALTER H. MICHAEL, Defendant and Respondent.

Stromsness & Hultgren and C. A. Stromsness for Plaintiff and Appellant.

Peters & Fuller and David H. Rush for Defendant and Respondent.

PIERCE, P. J.—Plaintiff sued on a written contract alleging that defendant employed him as an auctioneer to sell farm machinery, then repudiated the contract and hired another. The trial court sustained a special demurrer to the complaint. The sole basis of the court's order was that plaintiff did not have an auctioneer's license under a Glenn County ordinance requiring one. The questions on appeal from the judgment following plaintiff's refusal to amend arise from plaintiff's contention that he did not have to comply with the ordinance because (1) it is solely a revenue measure adopted contrary to constitution and law, and (2) violation of the ordinance, even if it were valid, does not invalidate his contract. Since the first contention posited is sound, we do not reach the second.

"The general policy of the state is opposed to the raising of revenue by the collection of direct taxes as a condition precedent to the conduct of business. [Citations.] How-

ever, a noncharter county may require a legitimate business to obtain a license if the county's purpose is to regulate or to raise funds to be used in regulating the business.'' *In re Gritton*, 46 Cal.2d 856, 858-859 [300 P.2d 7].) Professor Sato has reached the conclusion, expressed with some doubts, that case law indicates the California Constitution (art. XI, §§ 11 and 12) denies to counties—especially to noncharter counties[1] —the power to levy occupational taxes for revenue-raising purposes—in the absence of legislation expressly granting such power. (Sho Sato, *Municipal Occupation Taxes in California* (1965), 53 Cal.L.Rev. 801, 806, 807.) We need not explore that proposition. Whatever may be the effect of the constitutional provisions mentioned themselves to prohibit revenue-raising ordinance, they authorize the Legislature to do so beyond doubt. The prohibition against such ordinances by noncharter counties is expressly contained in Business and Professions Code section 16100.[2] It will be noted that a similar statutory prohibition does not extend to cities.

■ The ordinance involved here is Glenn County Ordinance 207. It declares itself in the title to be adopted ''for police regulation'' and, in section 1, to be an exercise of the county's ''police power and for the purpose of regulation.'' However, it is to the purpose *actually* contemplated and not that professed to which we must look. (*City of Los Angeles* v. *Lankershim* (1911) 160 Cal. 800, 801 [118 P. 215]; *In re Johnson* (1920) 47 Cal.App. 465, 466 [190 P. 852].)

■ By the terms of the ordinance persons operating businesses within the unincorporated portions of the county are made liable to pay specified license taxes. Some, like auctioneers and persons operating other businesses, both named and unnamed, are charged a fixed annual fee. (An auctioneer is charged $10 per year.) Others operating carnivals, circuses or engaged in theatrical performances, etc. are required to pay specified daily fees with annual maximum fees. Storage and other warehouses are taxed on a square inch basis. Fixed annual fees are not prorated, i.e., a full annual fee is exacted even though the business is in operation less than a year. To

---

[1] Glenn is a noncharter county.

[2] Section 16100 reads as follows: ''The boards of supervisors, in their respective counties, may in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise, license any kind of business not prohibited by law, transacted and carried on within the limits of their respective jurisdictions, including all shows, exhibitions, and lawful games, and may fix the rate of license fee and provide for its collection by suit or otherwise.''

all license taxes a $1.00 fee for issuance is added to be "paid into the salary fund." (§ XXI.) Penalties are added when a tax (payable in advance) becomes delinquent and the tax collector is authorized to bring suit to collect unpaid taxes with penalties. In addition nonpayment is declared to be a misdemeanor. There are "housekeeping" provisions which we need not mention. There is not a regulatory provision in the entire ordinance: nothing which is addressed to the public health, safety or welfare—nor any other matter in which the public could have any concern, save revenue raising. Neither persons engaged in auctioneering nor in any other occupation are scrutinized for character, qualifications, financial stability. Insofar as the provisions of this ordinance are concerned, rogues, mountebanks, con-men and quacks can prey on the public uncontrolled—if they can pay the required license fee.

Respondent points to section XVIII of the ordinance which provides that the tax collector is assigned the duty "to make diligent inquiry as to persons in the County of Glenn liable to pay a license tax." The inquiry is not addressed to their qualifications. It is simply a provision to insure that revenue "due" shall not escape collection. It is also contended that the amount of the tax is so low the charge made would not cover costs of its collection. We cannot agree. (1) The ordinance was adopted, we are told, in the early 1940's; its intent must be tested for its revenue-raising potential by the dollar-purchasing power at that time; (2) it must be read as a whole (*Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]), and some of the license taxes reach $100 per year; (3) the taxes are not gauged to the costs of processing. An additional sum of $1.00 per license issued is collected to cover such costs.

In *In re Johnson* (1920) 47 Cal.App. 465 [190 P. 852], the court in discussing an ordinance levying certain occupational tax and declaring it to be solely for revenue-raising purposes quotes on pages 466-467 from *Ex parte Braun* (1903) 141 Cal. 204, 205 [74 P. 780] : " 'It is devoid of regulating provisions, being devoted entirely to the imposition of a license tax upon various trades and occupations, and the collection thereof. It imposes a license tax upon a great majority of callings and occupations and, in several instances, the amount of the tax is based upon the amount of business transacted. It includes numerous callings which are in no degree subject to regulation. . . . Taking into consideration the absence of regulatory provisions, the amounts of the several taxes imposed and

the nature of many of the subjects of taxation named in the ordinance, including the particular business here involved, it is very clear that the license tax upon the business alleged to be conducted by petitioner was imposed solely for the purpose of raising revenue.' '' As stated, the statutory proscription against ordinances designed for revenue raising does not extend to cities and the ordinances involved in *In re Johnson, supra,* and *Ex parte Braun, supra,* were both city ordinances. But the language quoted is applicable here. The Glenn County ordinance involved, being also solely for revenue-raising purposes, is contrary to section 16100 and is therefore invalid. (*In re Gritton, supra,* 46 Cal.2d 856, 860-861.)

Respondent cites cases (*Ley* v. *Babcock,* 118 Cal.App. 525, 528 [5 P.2d 620]; *Hart* v. *Beverly Hills,* 11 Cal.2d 343, 344 [79 P.2d 1080]; and *In re West,* 75 Cal.App. 591 [243 P. 55]) in which the courts in referring to city ordinances requiring auctioneers to be licensed, refer to the ordinances there involved as "regulatory." None of these cases involved an ordinance shown to be similar to the Glenn County ordinance. The cases are not in point.

We do not have to decide the second contention of appellant: that even in the absence of section 16100, and assuming the validity of the Glenn County ordinance, his failure to conform thereto would not vitiate his contract.[3]

The judgment is reversed. The trial court is directed to overrule the demurrer.

Friedman, J., and Regan, J., concurred.

---

[3]But see *Wood* v. *Krepps* (1914) 168 Cal. 382, which states on page 387 [143 P. 691, L.R.A. 1915B 851]: "[W]hen the object of the statute or ordinance in imposing a license to conduct a harmless and legitimate business is solely for the purpose of yielding a public revenue and not for the purpose of protection, contracts made in the course of such business are valid, notwithstanding a penalty is imposed for a failure to obtain a license to conduct it."